Walter WRIGHT, Plaintiff,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Life Insurance Company, State Farm Fire & Casualty Company, and State Farm General Insurance Company, Defendants.**

Civil Action No. 94–2401–GTV.

United States District Court,
D. Kansas.

Dec. 14, 1995.

**1368**

Walter Wright, Overland Park, KS, pro se.

Dale L. Beckerman, Mimi E. Doherty, Deacy & Deacy, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court on defendants' motion (Doc. 50) for summary judgment under Fed.R.Civ.P. 56(b). Plaintiff has responded (Doc. 61) and opposes the motion. For the reasons set forth below, defendants' motion is granted.

## I. BACKGROUND

In this employment discrimination case, plaintiff seeks damages for defendants' violation of two federal anti-discrimination statutes and asserts state law claims. Plaintiff retained counsel to file his complaint, but counsel has withdrawn, and plaintiff proceeds pro se. His complaint contains five counts: race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); discriminatory treatment in violation of 42 U.S.C. § 1981 (Count II); intentional infliction of emotional distress (Count III); negligent infliction of emotional distress (Count IV); and breach of contract (Count V).

Defendants seek summary judgment on all counts of the complaint. First, defendants argue that summary judgment is appropriate on Counts I and II because plaintiff has not established that they discriminated on the basis of race. Second, defendants maintain

that judgment is appropriate on Counts III and IV because plaintiff has offered no evidence to support a finding that defendants' conduct was outrageous or that he suffered emotional distress. Finally, defendants argue that summary judgment is appropriate on Count V because their actions were consistent with the provisions of plaintiff's independent contractor's agreement and were not a breach of contract.

## II. LEGAL STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must examine the factual record and reasonable inferences therefrom in a light most favorable to the party who opposes summary judgment. *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

The defendants, as the moving party, have the initial burden to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden, the burden shifts to the plaintiff to identify specific facts that show the existence of a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Plaintiff's burden is to " 'present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor.' " *Thomas v. International Business Machines,* 48 F.3d 478, 484 (10th Cir.1995) (quoting *Bacchus Indus., Inc.,* 939 F.2d at 891). Plaintiff cannot rely on conclusory allegations to defeat a properly supported motion for summary judgment. *White v. York International Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

■ Summary judgment is normally inappropriate where an individual's state of mind and intent are implicated. Nonetheless, summary judgment is applicable in federal discrimination cases when the appropriate standards are met. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Summary judgment also is appropriate if the plaintiff fails to offer evidence of motive and intent in support of her discrimination claim. *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985).

### III. Facts

■ Defendants have established the facts of this case in accordance with D.Kan. Rule 56.1. Plaintiff's response, however, does not comply with the local rules.[1] In his opposition to defendants' motion, plaintiff fails to provide a concise statement of material facts that establishes the existence of a genuine issue that remains for trial. D.Kan. Rule 56.1. Thus, the court finds that defendants' proffered material facts are deemed uncontroverted. The court will not grant automatically defendants' motion for summary judgement because of plaintiff's failure to comport with the local rules. The court, however, will base its determination on defendants' statement of uncontroverted facts.

The uncontroverted facts are summarized as follows:

Plaintiff is a black male. Defendants are insurance carriers that sell insurance contracts and adjust claims under those contracts. In early 1991, defendants conducted an active program to recruit minority sales agents in Johnson County, Kansas. One of defendants' agency managers, Jim Klusman, recruited plaintiff to work for defendants.

Defendants hired plaintiff as a trainee agent on March 1, 1991. Plaintiff's trainee agent's agreement mandated a two-year training program. Upon completion of the training, plaintiff would be offered an agent's agreement and he would become an independent contractor for defendants. Plaintiff completed his training program in February 1993, and began his independent contractor's arrangement on March 1, 1993. Plaintiff claims that several of defendants' policies and decisions regarding his employment, both before and after he became an independent contractor, were based on his race. Those policies and decisions will be summarized more fully below.

Plaintiff complains that defendants provided him with inadequate training. Defendants provided plaintiff with an extensive educational program to train him in successful sales agent techniques. This educational program was available to all agent trainees and included: written materials on each of defendants' product lines that trainees received before becoming trainee agents; four week-long class sessions held at defendants' regional offices and local training center; individualized weekly training from defendants' agency managers covering defendants' products, selling techniques, and operation of an insurance office; training on how to operate defendants' computer system; training on how to handle claims; and monthly meetings where guest speakers would address a variety of topics.

Another contention by plaintiff is that he did not receive as many existing insurance policies as defendants awarded other trainee agents. During the training period, defendants assigned trainee agents a group of existing insurance contracts known as "orphaned policies." The orphaned policies came from defendants' agents who had re-

1. The court is cognizant that plaintiff proceeds pro se and it has abided by the general rule that the pleadings of a pro se litigant are construed liberally. *See, e.g., Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). Although it has searched plaintiff's opposition to summary judgment and the attachments thereto in an effort to find arguments and evidence that would prevent summary judgment, the court is not plaintiff's advocate and it should not construct arguments or theories for him. *Hall,* 935 F.2d at 1110;

*Drake v. City of Fort·Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

Plaintiff is held to the same rules of procedure governing other litigants. *Green v. Dorrell,* 969 F.2d 915, 917 (10th Cir.1992). He cannot withstand summary judgment simply by relying on allegations in his opposition that are unsupported by the evidence in the record. *See Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1024 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

tired, died, or terminated their agency agreements. Defendants awarded trainee agents the orphaned policies to help them establish their agencies by giving them a source of revenue from the policies' renewal premiums.

The number of orphaned policies available for assignment to trainee agents varied from year to year. Defendants' criteria for awarding orphaned policies was based on the location of the policyholder and trainee agent, the total number of trainee agents, and the total number of policies available. Upon becoming a trainee agent, plaintiff received 697 orphaned policies. He received an additional 673 orphaned policies during the two-year training program.

In January 1993, plaintiff's agency manager and agency director informed him that they were concerned with his job performance and that he might not become an independent contractor on his two-year anniversary date, March 1, 1993. Plaintiff met with his agency director again in February 1993 to discuss this situation. During this meeting, defendants conditioned an offer of an agent's agreement effective March 1, 1993, on plaintiff agreeing to attend an additional training session in their regional office.

Plaintiff executed his agent's agreement and became an independent contractor on March 1, 1993, but he failed to fulfill the condition that he attend the additional training session. Additionally, after becoming an independent contractor, plaintiff stopped attending the monthly training sessions that defendants provided to their independent contractors. In his deposition, plaintiff testified that he does not need additional training because he possesses all the knowledge necessary to operate his agency.

Plaintiff also contends that defendants did not promote him because of his race. Defendants provided its independent contractors with management advancement opportunities. Prior to January 1995, an agent who had been an independent contractor for two years could be promoted to agency manager. Trainee agents were not eligible for management level positions. Plaintiff first became eligible for a management position on March 1, 1995, but defendants had eliminated the agency manager position from its manage-

ment structure in January 1995. Plaintiff has never submitted an application to defendants for a management position.

Plaintiff maintains that defendants continued to treat him as an employee rather than as an independent contractor after March 1, 1993. Plaintiff operates his insurance business as a sole proprietorship. He maintains responsibility for all aspects of his office operation, including establishment of his office hours, as well as all staff employment decisions. It is plaintiff's responsibility to deduct his office expenses from his gross income on his tax return. Defendants pay plaintiff solely by commission and they have no responsibility to pay his social security taxes, unemployment taxes, or workers' compensation insurance. Defendants do not compensate plaintiff for sick days, vacation leave, or personal days.

As an independent contractor, plaintiff is not required to meet production sales goals, and he has absolute discretion in identifying insurance clients. In fact, plaintiff could elect to service only his existing policyholders rather than attempt to sell new insurance contracts. Plaintiff also has discretion to decide which of defendants' insurance lines that he would represent. He chose to focus his attention on the sale of automobile and homeowner insurance contracts.

During his training period, however, plaintiff did solicit life insurance contracts. Plaintiff argues that defendants discriminated against him in the sale of life insurance contracts by conducting personal history interviews on all of his life insurance applications. After plaintiff met with applicants to obtain information about their personal history to complete the application process, he submitted the contract applications to defendants' underwriting department for approval. The underwriting department conducted random personal history interviews with applicants to verify the information submitted in the life insurance applications. Defendants used this process to satisfy themselves as to the integrity of the information contained in the life insurance applications. As a general rule, defendants' underwriters did not target all

life insurance applications for personal history interviews.

While conducting this verification procedure on some of plaintiff's life insurance applications, defendants' underwriters discovered that many of the applications contained inaccurate information. Defendants' personal history interviews of plaintiff's applicants uncovered that some of the applicants' smoking status, weight, and medical histories were incorrect. In November 1991, after discovering those inaccuracies, defendants began conducting personal history interviews on almost all of plaintiff's life insurance applications.

Plaintiff next complains that he was discriminated against because defendants did not include him in their advertising program and required him to obtain pre-approval before he could purchase advertisements. To aid its agents in soliciting business, defendants provided advertisements on television and radio stations that refer to its products and name several authorized sales agents. Defendants paid a substantial portion of the advertising costs for trainee agents and a smaller percentage of the costs for independent contractors.

In September 1993, defendants informed plaintiff about the advertising program for the upcoming year and provided him with a form to complete if he wanted to participate. Over a month later, plaintiff sent defendants a note that indicated his desire to participate in the advertising program. At the time defendants received plaintiff's note, they were in the process of producing the advertisements for the next year. Before defendants included plaintiff in the advertisements, they wanted to confirm his intention to participate. Defendants were concerned that plaintiff was unaware that his share of the advertising rate had increased from the previous year because of his new status as an independent contractor. Defendants did not include plaintiff in the 1993–94 advertising program because they were unable to contact him about the increased percentage of his advertising rate. Plaintiff elected not to participate in the 1994–95 advertising program.

Finally, plaintiff contends that defendants participated in discriminatory conduct by placing him on "non-bind" status. In 1993, defendants began a reinspection program for the homes that it insured. Defendants required their agents to reinspect the lesser of 250 homes or 70% of their insured homes by the end of the program's first year. An agent's failure to complete the required reinspections within the year would result in defendants placing him or her on "non-bind" status. Normally, an agent could provide an applicant with insurance coverage once he or she completed the application for insurance. However, if defendants placed an agent on non-bind status, his or her insurance applications required approval by defendants' underwriters before coverage would issue.

Plaintiff, along with twelve other agents, failed to reinspect the required number of homes in the first year of the program and were placed on non-bind status. As of October 1994, seven agents, including the plaintiff, were placed on non-bind status.

## IV. ANALYSIS

Plaintiff advances five theories to support recovery. The court will address each theory in turn.

## A. Title VII

Plaintiff claims disparate treatment and a hostile work environment. Title VII prohibits an employer from discriminating against an employee in the "terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1).

■ Under Title VII the court's jurisdiction may be invoked only in actions involving an employer and an employee. In this case, defendants contend that the court lacks jurisdiction to decide plaintiff's Title VII claim because it is not plaintiff's employer under the statute. Defendants argue that plaintiff ceased being their employee upon becoming an independent contractor in March 1993. The court agrees.

■ In the Tenth Circuit, an independent contractor is not within the definition of employee in certain anti-discrimination statutes. *See Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303 (10th Cir.1992)

**1372**

(insurance agent/independent contractor not an employee under the Age Discrimination in Employment Act). In *Oestman,* the Court of Appeals adopted the "hybrid test" for determining whether an independent contractor qualifies as an employee under the ADEA. 958 F.2d at 305. In applying this test, the court should not focus on a single factor as conclusive, but should examine the "totality of circumstances surrounding the working relationship between the parties." *Id.* For purposes of its Title VII analysis, the court concludes that the facts in the instant action, taken as a whole, establish that plaintiff ceased being defendants' employee on the day he became an independent contractor—March 1, 1993. The court concludes that it does not have jurisdiction to decide plaintiff's allegations of Title VII discriminatory conduct that occurred after that date.

■ Additionally, plaintiff alleges certain discriminatory acts that are time barred. Title VII requires that an administrative charge of discrimination be filed within 300 days after an alleged unlawful practice occurs. 42 U.S.C. § 2000e–5(e). This requirement is a prerequisite to maintaining a civil suit under Title VII. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Plaintiff filed his complaint with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission on August 26, 1993. Accordingly, the court may consider only those alleged discriminatory acts that occurred within 300 days of August 26, 1993, or after October 30, 1992. The court concludes that plaintiff's status as an independent contractor in conjunction with the applicable limitations period restricts the scope of its inquiry to discriminatory conduct that might have occurred between October 30, 1992, and March 1, 1993. The court will now proceed to the substance of plaintiff's claims.

■ To prevail on his Title VII claim, plaintiff "must prove ... that [defendants] had a discriminatory motive or intent." *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). He must demonstrate that his race was the motivation for his supervisors' employment decisions. *See E.E.O.C. v. Flasher Co., Inc.,* 986 F.2d 1312,

1319 (10th Cir.1992) (essence of a disparate treatment claim is intentional discrimination based upon a protected classification); *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 702 (10th Cir.1984) (the defendant is not required to treat all employees equally, but is prohibited from dispensing unequal treatment based on the sex of an employee). Plaintiff need not prove that his supervisors' employment actions were solely motivated by his race, but he must show that his race was the factor that made a difference. *See Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995). That is, plaintiff's supervisors would not have denied him the terms and conditions of his employment but for his race. *Id.*

■ Proof of a discriminatory motive is crucial to this determination. *See Sorensen v. City of Aurora,* 984 F.2d 349, 351 (10th Cir.1993) (plaintiff must prove that the defendant had a discriminatory motive or intent by a preponderance of the evidence). Absent direct evidence, plaintiff may use an indirect method to prove discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In this case, the critical element in plaintiff's *prima facie* case is whether the defendants' agents treated non-protected employees more favorably than the plaintiff under comparable circumstances. *See Ortega,* 943 F.2d at 1236; *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir.1991).

■ Plaintiff has the initial burden of proving his *prima facie* case of discrimination. *Id.* The burden then shifts to the defendants to "articulate some legitimate, nondiscriminatory reason for [his conduct]." *Id.* If the defendants carry this burden, it shifts back to the plaintiff to prove that the reasons proffered "by the defendant[s] were not [its] true reasons, but were pretexts for discrimination." *Id.* Despite the framework of shifting burdens, the ultimate burden of persuasion resides at all times with the plaintiff. *Id.*

To establish his *prima facie* case, plaintiff must show: (1) that he is a member of a protected class of persons; (2) that he was entitled to the desired terms and conditions of employment; (3) that defendants denied plaintiff the desired terms and conditions of employment; and (4) that similarly situated non-protected employees were granted the desired terms, conditions, and privileges of employment. *Moore v. Norfolk & W.R. Co.*, 731 F.Supp. 1015, 1019 (D.Kan. 1990); *Boyd v. Telecable of Overland Park, Inc.*, 752 F.Supp. 388 (D.Kan.1990). To survive defendants' motion for summary judgment, plaintiff must establish each element of his *prima facie* case.

The court concludes that plaintiff has not established a violation of Title VII because he has not made a *prima facie* showing of disparate treatment or of a hostile work environment in the terms and conditions of his employment based on his race. With respect to his claim of inadequate training, the court notes that this allegation is inconsistent with plaintiff's deposition testimony where he admitted that he did not need additional training because he knew everything he needed to know about defendants' insurance business. Additionally, defendants provided plaintiff with extensive training that included four week-long training classes, training in the use of its computer system, training in the automobile and fire claims offices, and monthly training meetings. Defendants also designed a training program specifically for plaintiff after he complained about the adequacy of his training in early 1993. He responded by failing to attend or to schedule a make-up of that training program. Plaintiff also stopped attending the monthly training meetings.

The court concludes that defendants provided plaintiff with the opportunity to receive the necessary training for his position, but plaintiff made a conscious decision to bypass those training opportunities. The court further finds that plaintiff failed to demonstrate that defendants provided similarly situated non-protected employees with training opportunities that were not available to plaintiff.

Plaintiff next claims that defendants discriminated against him by not promoting him to agency manager. To succeed, plaintiff must show that he (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority. *See Reynolds v. School District No. 1, Denver, Colorado*, 69 F.3d 1523, 1528–29 (10th Cir.1995); *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir.1983).

The court concludes that plaintiff was not qualified for promotion to agency manager. Defendants' management promotion policy required that their agents have at least two years experience as an independent contractor before they could be considered for the agency manager position. Plaintiff became an independent contractor on March 1, 1993, and he filed this action October 7, 1994. At that time, plaintiff was seventeen months short of the requisite experience level necessary to meet defendants' management qualifications. There also is no evidence to support a finding that plaintiff applied for the agency manager position, and, in fact, defendants eliminated this position three months prior to plaintiff meeting the eligibility requirement.

Plaintiff also claims that defendants discriminated against him because its underwriters scrutinized each life insurance application that he submitted. Due to the discrepancies that defendants' underwriters found in plaintiff's life insurance applications, they began conducting personal history interviews on almost all of plaintiff's life insurance applications.

The court concludes that this argument fails because plaintiff has not offered evidence to demonstrate that similarly situated non-protected employees received more favorable treatment. Plaintiff's evidence fails to establish that defendants did not conduct personal history interviews on all of the life insurance applications of non-protected agents if they discovered that those applications contained inaccurate information.

Plaintiff further claims that defendants' actions in the assignment of "orphaned" policies were discriminatory. Plain-

tiff contends that he received fewer orphaned policies than similarly situated non-protected employees. The facts do not support plaintiff's argument. During the time pertinent to this action, six trainee agents, including two blacks, received more orphaned policies than plaintiff. The court concludes that plaintiff has not established this claim because other protected employees also were treated more favorably than plaintiff.

 Finally, plaintiff claims that defendants violated Title VII by providing a hostile work environment. To prevail, plaintiff's evidence must show that:

> under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.... The plaintiff must show more than a few isolated incidents of racial enmity. Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.

*Bolden*, 43 F.3d at 551 (citations omitted). *See also, Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987).

 Plaintiff's harassment claim must assert facts that support an inference of a hostile work environment and a basis for liability. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir.1994). He must demonstrate that defendants' conduct " 'ha[d] the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.' " *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1418 (10th Cir. 1993) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986)).

 The court will consider only those incidents of defendants' alleged racial conduct that occurred between October 30, 1992, and March 1, 1993.[2] Plaintiff claims that

defendants' harassing conduct consisted of: his agency manager asking him whether he preferred being referred to as black or African–American; being told that as a black agent he would have to work twice as hard as a white agent; being told that he was wasting his time trying to save poor black children; defendants' underwriters failing to return telephone calls; defendants' failure to promptly address policyholders' requests to transfer their policies to plaintiff's agency; and defendants' threat in January 1993 that plaintiff would not be offered an independent contractor's agreement because of poor work performance. Plaintiff maintains that defendants' conduct was racially motivated and created a hostile work environment.

In considering the totality of the circumstances, the court notes the dearth of evidence in establishing the pervasiveness of the conduct that plaintiff alleges or that the alleged misconduct stemmed from racial animus. The foregoing incidents were sporadic and appear unrelated to each other. Defendants' conduct, by any stretch of the imagination, does not demonstrate a working environment that was permeated with a steady barrage of racial comments, intimidation, ridicule or insult. *Bolden*, 43 F.3d at 551. The court finds that plaintiff's claim of hostile work environment is unsupported by the evidence and that summary judgment on this issue is appropriate.

Plaintiff has failed to establish that defendants discriminated against plaintiff in the terms and conditions by treating him differently than non-protected employees or targeting him for abuse in a hostile work environment. The court concludes that summary judgment is appropriate on Count I.

### B. Section 1981

In Count II of his complaint, plaintiff alleges discriminatory treatment in violation of 42 U.S.C. § 1981. Section 1981 provides that

---

**2.** The court's analysis of plaintiff's status as an independent contractor and the relevant statute of limitations limit the scope of the court's inquiry of defendants' conduct on plaintiff's claim of a hostile work environment.

The court acknowledges that the Tenth Circuit recognizes the continuing course of conduct ex-

ception for conduct that occurs outside the 300 day statute of limitations. *See Martin*, 3 F.3d at 1415. However, the court concludes that the facts of this case do not support the application of this doctrine.

"[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). Section 101 of the Civil Rights Act of 1991 amended § 1981 and provides that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

As a preliminary matter, the court notes that it cannot consider all of plaintiff's allegations regarding defendants' conduct because some of the alleged conduct is time barred. The Tenth Circuit has held that the Kansas two-year statute of limitations for actions in personal injury applies to § 1981 actions. *See Baker v. Board of Regents of State of Kansas,* 991 F.2d 628, 630 (10th Cir.1993) (because § 1981 does not specify a limitation period, the court must look to analogous state law for a limitations period). Plaintiff brought this action on October 7, 1994. Thus, the court's consideration is limited to defendants' actions that occurred subsequent to October 7, 1992.

■■■■■ To succeed on his § 1981 claim, plaintiff must prove that he was subjected to intentional discrimination. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989). The allocation of burdens applicable to plaintiff's Title VII claim also are applicable under § 1981. *Durham v. Xerox Corp.,* 18 F.3d 836, 839 (10th Cir.1994). Much of plaintiff's § 1981 claim is premised on the same conduct at issue in his Title VII claim. The court finds that summary judgment is appropriate on that conduct for the same reasons as discussed above.

■■■■ Plaintiff further asserts that defendants violated the terms and conditions of his independent contractor agreement by placing him on non-bind status, denying his participation in defendants' advertising program, and creating a hostile work environment. Defendants respond that this additional conduct does not constitute intentional discrimination.

In 1993, defendants instituted a reinspection program for all of its insured premises. After the first year of this program, thirteen agents, including the plaintiff, had not complied with the required number of reinspections and were placed on non-bind status. Of those thirteen agents, eleven were white and two were black. As of January 1995, five agents remained on non-bind status; three whites and two blacks.

Plaintiff's § 1981 claim fails on this issue because he has not shown that similarly situated non-protected agents received more favorable treatment. In fact, the evidence establishes just the opposite—there were more non-protected agents than protected agents placed on non-bind status. The court finds that defendants are entitled to summary judgment on this issue.

Plaintiff also claims that defendants denied him the opportunity to participate in its advertising campaign. Due to defendants' inability to secure confirmation of plaintiff's intention to pay an increased rate for the advertising program, they did not include him in the 1993–94 advertising program.

Additionally, plaintiff claims that his race was the basis for defendants' requirement that he obtain permission to use defendants' trademark in advertisements for his agency. Defendants respond that a standard clause in every independent contractor's agreement reserves the right for it to control advertising that incorporates its trademark, including obtaining pre-approval for particular advertising.

Plaintiff offers no evidence to establish that defendants' were racially motivated in requiring plaintiff's confirmation before including him in the yearly advertising program. Additionally, there is no evidence to demonstrate that plaintiff had the right to advertise defendants' trademark without prior authorization or that similarly situated non-protected employees could advertise without defendants' approval. The court concludes that defendants' actions were not discriminatory and that summary judgment is appropriate on this issue.

Finally, plaintiff argues that defendants violated § 1981 by creating a hostile work environment. Plaintiff offers two incidents to support this claim. In August 1993, he alleges that a vice-president of defendants failed to return a telephone call and that his agency manager entered his office without first knocking on the door. It is incredulous that plaintiff could seriously believe that those two isolated incidents would satisfy the threshold pervasiveness required in a hostile work environment claim. The court finds that defendants did not create a hostile work environment and grants summary judgment on this issue.

The court concludes that summary judgment is appropriate on plaintiff's § 1981 claim. With respect to the conduct already alleged in his Title VII claim, plaintiff's claim fails for the same reasons that the court stated above. Plaintiff cannot avoid summary judgment with the additional incidents that he alleges because they do not establish that defendants violated § 1981. The court grants defendants' motion for summary judgment on Count II.

## C. Intentional Infliction of Emotional Distress

In Count III of his complaint, plaintiff alleges a claim of intentional infliction of emotional distress, also known as the tort of outrage. He claims that defendants' supervisors harassed him based on his race. Defendants respond that summary judgment is appropriate on this issue because its conduct was not "extreme and outrageous."

This claim is governed by Kansas law and Kansas courts have applied this tort cautiously. To sustain his claim, plaintiff must show "extreme and outrageous intentional or reckless conduct that causes extreme and severe emotional distress." *Meininger v. Swift–Eckrich, Inc.*, No. 93–4166–RDR, 1995 WL 42700, at *3 (D.Kan. 1995) (citing *Burgess v. Perdue*, 239 Kan. 473, 721 P.2d 239, 242 (1986)). Defendants' conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

To establish his claim, plaintiff offers the same evidence he proffered in his Title VII claim. However, conduct that would violate Title VII does not automatically become outrageous conduct under Kansas law—something more is required. *Meininger*, 1995 WL 42700, at *4; *Laughinghouse v. Risser*, 754 F.Supp. 836, 843 (D.Kan.1990); *Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916 (1982).

As a matter of law, the court concludes that plaintiff has not met the requirements under Kansas law to support his claim that defendants intentionally inflicted emotional distress. The evidence, even when viewed in a light most favorable to plaintiff, fails to demonstrate defendants' conduct was outrageous. Additionally, plaintiff has presented no evidence to establish that he suffered extreme or severe emotional distress. With respect to Count III, the court grants defendants' motion for summary judgment.

## D. Negligent Infliction of Emotional Distress

In Count IV, plaintiff claims that defendants are liable for negligent infliction of emotional distress. Under Kansas law, there can be no recovery for emotional distress caused by another person's negligence unless it is accompanied by or results in physical injury. *See McDonald v. State of Kansas, Department of Corrections*, 880 F.Supp. 1416, 1424 (D.Kan.1995); *Humes v. Clinton*, 246 Kan. 590, 792 P.2d 1032, 1038 (1990). A physical injury is required to guard against fraudulent or exaggerated claims. *See Freeman v. Kansas State Network, Inc.*, 719 F.Supp. 995, 1001 (D.Kan. 1989) (emotional distress is a common life experience that is usually trivial); *Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1534 (D.Kan.1990).

In this case, plaintiff's claim for negligent infliction of emotional distress fails because he has not demonstrated that defendants' alleged discrimination caused him to suffer emotional injury in conjunction with a contemporaneous physical injury. The court

finds that summary judgment is appropriate on Count IV.

## E. Breach of Contract

In Count V, plaintiff alleges that defendants breached his independent contractor's agreement by treating him as an employee rather than as an independent contractor. Defendants respond that the terms of the contractual arrangement are explicit and that its actions were in accordance with those provisions.

In Kansas, the court must interpret the contract in light of its own provisions. *See Wiles v. Wiles,* 202 Kan. 613, 452 P.2d 271, 276 (1969). A clear and unambiguous contract must be construed within the four corners of the instrument and the court must give effect to the intention of the parties at the time they entered into the contract. *Id; see also Godfrey v. Chandley,* 248 Kan. 975, 811 P.2d 1248, 1250–51 (1991) (contract construction is a matter of law and the court may construe the instrument and give it its legal effect).

The actions that plaintiff complains of in Count V were contemplated by the parties when they entered into the independent contractor's agreement on March 1, 1993. Defendants' actions in establishing underwriting guidelines, requiring that plaintiff obtain pre-approval before advertising, and mandating that plaintiff exclusively represent defendants' lines of insurance were consistent with the contract's provisions. Plaintiff was aware of those provisions before he entered into the contractual relationship and he cannot complain now that defendants have breached the contract by exercising rights specifically provided for in the instrument. The court finds that plaintiff has offered no evidence to support his claim of breach of contract. Defendants' motion for summary judgment on Count V is granted.

The court concludes that summary judgment is appropriate on all of plaintiff's claims.

IT IS, THEREFORE, BY THE COURT ORDERED that defendants' motion for summary judgment (Doc. 50) is granted. The case is dismissed.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**