# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1082
No. 99-1699

_____

| | | |
|---|---|---|
| Christine Schwieger, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Farm Bureau Insurance Company of | * | |
| Nebraska; Farm Bureau Life Insurance | * | |
| Company of West Des Moines, Iowa, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: December 13, 1999

Filed: March 23, 2000
_____

Before WOLLMAN, Chief Judge, McMILLIAN, Circuit Judge, and BATTEY,[1] District Judge.

_____

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

WOLLMAN, Chief Judge.

Christine Schwieger appeals from the district court's[2] dismissal with prejudice of her sex discrimination claims against Farm Bureau Insurance Company of Nebraska and Farm Bureau Life Insurance Company of West Des Moines (collectively, Farm Bureau). We affirm.

**I.**

Schwieger worked for Farm Bureau as a sales agent starting in 1981. Beginning in 1992, her relationship with Farm Bureau was defined by a contract, terminable at will by either party, declaring "the intent of the parties" that Schwieger was to be "an independent contractor and not an employee." Farm Bureau unilaterally terminated the work relationship in 1995, and Schwieger brought suit, alleging that the company had shown favoritism and retaliated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101.

The district court held a bifurcated bench trial in order to address the preliminary question of Schwieger's employment status, the parties having stipulated that Title VII protects only employees and not independent contractors and that the viability of the pendent state claim hinged on determination of the same issue. Although Schwieger testified that when she entered into the 1992 contract her intent was to be an independent contractor, she contended that Farm Bureau exercised so much control over her that she was a *de facto* employee.

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

The court first noted several facts suggesting that Schwieger was an independent contractor. It found that Schwieger, who considered herself an insurance professional, had paid for her own state license, had obtained various professional certifications, and operated under a code of ethics. She was paid by commission and was responsible for her own taxes. Schwieger controlled her own schedule, client accounts, and customer lists; selected her office location; and was not restricted to any particular sales territory. Although Farm Bureau assisted Schwieger with advertising costs; offered her errors and omissions coverage; and provided her with letterhead, business cards, computer software and training on company insurance products, the court found that Schwieger was not required to advertise or purchase any items through the company, that she had the option of obtaining errors and omissions coverage elsewhere, and that attendance at training sessions was not mandatory.

On the other hand, the court also noted that "some aspects of Plaintiff's relationship with the defendant companies suggest an employment relationship." For example, customers made out all checks to Farm Bureau, not to Schwieger, and the sign outside her office had to meet with company approval and could not include her name. Premiums for errors and omissions coverage, fees for various office expenses, and the salaries of Schwieger's own employees were paid through the company by deductions from her commission checks. Schwieger was also enrolled in a company retirement plan and was overseen by a district manager who regularly reviewed her performance and helped her set and achieve sales goals.

Applying the common law of agency, the district court found that the balance of factors led to the conclusion that Schwieger was an independent contractor and thus dismissed the case in its entirety. Subsequently, Schwieger moved for relief from the judgment under Rule 60(b)(2), arguing that new evidence had come to her attention that undermined Farm Bureau's assertion that it allowed its agents to retain their customer lists upon termination. The district court denied the motion on the grounds that Schwieger failed to show that she had exercised due diligence to discover the evidence

prior to trial and that, even if the evidence had been before the court originally, its finding that Schwieger was an independent contractor would not have been affected. Schwieger timely appealed from both rulings.

## II.

Title VII, which makes it an unlawful employment practice for an employer to discharge any individual because of that individual's sex, see 42 U.S.C. § 2000e-2(a)(1), protects only employees, not independent contractors. See Wilde v. County of Kandiyohi, 15 F.3d 103, 104 (8th Cir. 1994). The statute's nominal definition of an "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), "is completely circular and explains nothing." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (characterizing identically-worded definition in ERISA). In such circumstances we presume that "'. . . Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.'" Id. (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739-40 (1989)); see Birchem v. Knights of Columbus, 116 F.3d 310, 312 (8th Cir. 1997); Wilde, 15 F.3d at 104-06.

Under the common-law approach,[3] determining whether a hired party is an employee or an independent contractor involves consideration of "all aspects of the working relationship" between the parties. Wilde, 15 F.3d at 106. The existence of a contract referring to a party as an independent contractor does not end the inquiry, because an employer "may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship." Devine v. Stone, Leyton

---

[3]Schwieger urges us to look to Nebraska's common law of agency, but the Supreme Court has held that the definition of "employee" must be construed according to "'the general common law of agency, rather than . . . the law of any particular State.'" Darden, 503 U.S. 323 n.3 (quoting Reid, 490 U.S. at 740).

& Gershman, P.C., 100 F.3d 78, 81 (8th Cir. 1996). There is "no shorthand formula or magic phrase that can be applied to find the answer," and therefore "'. . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" Darden, 503 U.S. at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)); see Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380-81 (7th Cir. 1991).

A primary consideration is the hiring party's right to control the manner and means by which a task is accomplished. See Darden, 503 U.S. at 323; Berger Transfer & Storage v. Central States, S.E. & S.W. Areas Pension Fund, 85 F.3d 1374, 1379 (8th Cir. 1996); Wilde, 15 F.3d at 105. In addition, the Supreme Court has identified twelve other factors for courts to take into account:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Darden, 503 U.S. at 323-24 (quoting Reid, 490 U.S. at 751-52 and citing Restatement (Second) of Agency § 220(2) (1958)). This list is nonexhaustive, and we also weigh the "economic realities" of the worker's situation, including factors such as how the work relationship may be terminated and whether the worker receives yearly leave. See Wilde, 15 F.3d at 105. Although the employee-independent contractor inquiry is fact-intensive, and the district court's factual findings are subject to deference, see Berger, 85 F.3d at 1377-78, we review the ultimate question of employment status de novo, see Birchem, 116 F.3d at 313.

## III.
### A.

We turn, then, to the facts of this case, beginning with the question of control and then proceeding to consider both the twelve additional factors listed in <u>Darden</u> and the economic realities of the work relationship. First, the court found that Farm Bureau did not exercise so much control over the manner and means of Schwieger's sales operation as to render her an employee. <u>Cf.</u> <u>Wilde</u>, 15 F.3d at 105. Schwieger disagrees, adducing evidence from the record to show that she was required to submit weekly and monthly production reports to a manager who kept track of whether she was meeting her goals and sales quotas and who could reassign her accounts to other agents in certain circumstances. Schwieger received performance evaluations and other feedback on such things as profitability, dress, and "attitude." She was expected to notify her manager of any vacations, attend training sessions on Farm Bureau products and selling techniques, and read certain books. She needed company authorization for advertisements, business cards, and choice of office location. She was allowed to write policies only for approved insurance companies, and she was subject to disciplinary counseling for errors of professional judgment that harmed Farm Bureau.

Although these facts may be indicative of the control that exists in a traditional employer-employee relationship, the district court found that some of Schwieger's specific allegations were mistaken and that additional facts cut against a finding of control. For example, although Schwieger testified that she was required to have her office "open and staffed from 8:30 to 5:00," Farm Bureau presented evidence that, while it expected agents to maintain regular office hours of some sort, it did not mandate the schedule. Schwieger also stated that she felt attendance at training sessions to be mandatory, but Farm Bureau contended that agents had the option of training themselves using product manuals. The district court credited Farm Bureau's evidence on these and other issues, and Schwieger has not persuaded us that these factual findings are clearly erroneous. <u>See</u> <u>Berger</u>, 85 F.3d at 1377-78.

Furthermore, Schwieger's 1992 contract declaring her to be an independent contractor stated that certain "training courses, sales methods and material or similar aids and services" might be made available to agents. Much of what Schwieger perceived as control over the details of her business was not necessarily inconsistent with this contractual concept of "aids and services" provided to independent contractors in order to help them improve their own businesses. For example, Schwieger testified that all advertisements were subject to company approval. Farm Bureau, however, presented evidence that agents are not required to advertise at all, and if they choose to do so the company contributes to part of the cost and reviews the advertisements solely for compliance with government and industry guidelines. Schwieger also stated that she was required to obtain her errors and omissions coverage through Farm Bureau, and that the company provided her with office space at a favorable rate through a "captive rental agreement." Farm Bureau offered proof, to the contrary, that agents are free to purchase errors and omissions coverage and find office rental space with or without the company's assistance. These and other similar arrangements, such as bonuses offered to agents as incentives to obtain advanced education, seem less indicative of heavy-handed control over agents' businesses than of Farm Bureau's willingness to help its agents succeed – a stance that naturally leads to policies that are of mutual benefit to both the company and the agents. Thus, whereas Schwieger contends that Farm Bureau's control over her business was nearly complete, we find that the overall evidence on the question of control is inconclusive.

We turn next to the nonexhaustive list of twelve additional factors set forth in Darden, see 503 U.S. at 343-24, and find that the majority support the conclusion that Schwieger was an independent contractor. First, regarding "the skill required," Schwieger does not dispute that throughout her relationship with Farm Bureau she considered herself an insurance professional: she was licensed by the state of Nebraska at her own expense, was subject to a code of professional ethics, and had been certified by professional associations. Thus, this factor weighs heavily in favor of independent contractor status.

Second, as to "the source of the instrumentalities and tools," Schwieger provided and paid for most, though not all, of her own office supplies and other equipment. The company did lease a computer to Schwieger and provide her with software for processing policies and maintaining client accounts. Farm Bureau also contributed to some advertising costs, and apparently provided certain company-specific items such as forms, letterhead, and business cards. Beyond this, however, Schwieger was responsible for everything else needed to run her insurance sales business, including general office supplies, common building expenses, telephones, and furniture. Thus, on balance, this factor weighs more heavily toward the conclusion that Schwieger was an independent contractor than toward the conclusion that she was an employee.

The third factor, "the location of the work," supports the district court's conclusion that Schwieger was an independent contractor because she worked almost entirely out of her own office facility and in the field and was not subject to physical supervision in the performance of her daily tasks. On the other hand, the fourth factor, "the duration of the relationship between the parties," appears to militate toward employee status in light of Schwieger's long-standing relationship with Farm Bureau. The fifth factor, "whether the hiring party has the right to assign additional projects to the hired party," weighs in favor of finding Schwieger to have been an independent contractor because Farm Bureau did not usually "assign projects" to her at all; rather, the essence of her work was to establish her own client base in order to sell insurance policies when and where she wished.

Sixth, we look to "the extent of the hired party's discretion over when and how long to work." As we discussed above when considering the question of control, the parties disagree on this point. Because the district court's finding that Schwieger "could establish her own working schedule" is not clearly erroneous, this factor points toward a conclusion that she was an independent contractor and not an employee. The seventh factor, "the method of payment," also weighs in favor of finding Schwieger to

have been an independent contractor because she did not receive a wage or salary but was paid strictly by commission.

However, the eighth factor, "the hired party's role in hiring and paying assistants," presents something of a mixed question. Although Schwieger employed her own secretary and other support staff, their salaries were paid directly by Farm Bureau, which then deducted those salaries from Schwieger's commission checks. Moreover, Schwieger apparently had no say in setting the amount, method, or timing of pay for her own employees.

The ninth and tenth factors, "whether the work is part of the regular business of the hiring party" and "whether the hiring party is in business," both count in favor of finding Schwieger to be an employee since Farm Bureau is a business and Schwieger's work of selling insurance is central to that business.

The eleventh factor, "the provision of employee benefits," cuts both ways. On the one hand, Farm Bureau provided a "non-participatory" pension plan for its career agents – an unusual arrangement for an independent contractor. On the other hand, Schwieger had to purchase health, life, and any other insurance on her own. Additionally, as mentioned above, Schwieger had to pay for the errors and omissions coverage she obtained through Farm Bureau, and was free to look elsewhere for such a policy.

The twelfth, and final, additional factor from the Darden list is "the tax treatment of the hired party." In Schwieger's case, this factor plainly weighs in favor of independent contractor status since she was fully responsible for her own federal and state withholding taxes and social security deductions.

Lastly, we consider the "economic realities" of the relationship between Schwieger and Farm Bureau. See Wilde, 15 F.3d at 105. Most aspects of this issue

have already been addressed in the discussion above, but we further note the lack of any leave or vacation policy and observe that the contract could be terminated at will by either party. Both of these factors weigh in favor of independent contractor status.

In summary, then, it appears that on the general issue of control, the conclusion is mixed, clearly favoring neither employee nor independent contractor status. Of the twelve additional Darden factors, five count in favor of independent contractor status (the skill required; the location of the work; the right to assign additional projects; the method of payment; and tax treatment), two weigh slightly more heavily toward finding Schwieger to have been an independent contractor than toward finding her to have been an employee (the source of the instrumentalities and tools; and the extent of the hired party's discretion over when and how long to work), two appear fairly evenly balanced (the hired party's role in hiring and paying assistants; and employee benefits), and three count toward employee status (the duration of the relationship; whether the work is part of the hiring party's regular business; and whether the hiring party is in business). Finally, to the limited extent that the economic realities of Schwieger's working relationship with Farm Bureau are not reflected in the analysis of the Darden factors, they support the view that she was an independent contractor.

Our inquiry, of course, requires more than simply tallying factors on each side and selecting the winner on the basis of a point score. The combined weight of all these factors, however, when considered together in light of common-law agency principles, convinces us that the working relationship constituted an independent contractor arrangement. The 1992 contract between Schwieger and Farm Bureau evidences the parties' original intent to enter into an independent contractor relationship, and indeed that is what they did: Schwieger, a skilled professional, was paid by commission, was responsible for all her own taxes, rented her own office space, hired and paid her own assistants, and was essentially free to conduct her business when, how, and with whomever she chose, with little or no supervision of her day-to-day activities. As the district court observed, the fact that some aspects of

Schwieger's relationship with Farm Bureau suggest an employment relationship is insufficient to outweigh the strong evidence indicating that Schwieger was an independent contractor.[4] See Birchem, 116 F.3d at 313; Wilde, 15 F.3d at 106; Knight, 950 F.2d at 380-81.

**B.**

Schwieger also challenges the district court's denial of her motion for relief under Rule 60(b)(2), which permits courts to revisit final judgments in light of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). We have held that Rule 60(b) "'provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances,'" Hepper v. Adams County, 133 F.3d 1094, 1096 (8th Cir. 1998) (quoting United States v. Young, 806 F.2d 805, 806 (8th Cir. 1986)), and we will reverse the district court's refusal to grant a 60(b) motion only on a showing of abuse of discretion. See Mitchell v. Shalala, 48 F.3d 1039, 1041 (8th Cir. 1995). In order to prevail under Rule 60(b)(2), the movant must show that: (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result. See id.

---

[4]NLRB v. United Insurance Company, 390 U.S. 254 (1968), which Schwieger cites as an example of a federal court holding an insurance agent to be an employee, is not to the contrary. In that case, the Supreme Court found a work relationship containing substantially more indicia of an employee arrangement than Schwieger's to be one of those "innumerable situations which arise in the common law where it is difficult to say whether a particular individual is an employee or an independent contractor." Id. at 258. Applying familiar principles of administrative law, the Court held merely that in these equivocal circumstances, the court of appeals should have deferred to the NLRB's "choice between two fairly conflicting views." Id. at 260.

In support of her motion, Schwieger submitted five exhibits suggesting that Farm Bureau considers its agents' computerized customer lists and related data to be confidential and proprietary information that agents must return to the company upon termination. Schwieger's accompanying affidavit claimed that this evidence, which included an article written by Farm Bureau's Vice President of Marketing as well as documents from threatened and actual lawsuits by Farm Bureau against former agents, contradicted testimony the court had relied upon in reaching its conclusion that she was an independent contractor.

The district court found that Schwieger had not shown that she exercised due diligence to discover these documents prior to trial, and that in any event the evidence about the proprietary nature of the computer database would not by itself have led to the conclusion that Schwieger was an employee rather than an independent contractor. Suffice it to say that we find no error in the district court's ruling on the motion.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.