Arlene HOLTZMAN, Plaintiff,

v.

THE WORLD BOOK COMPANY, INC., Defendant.

No. CIV.A. 00–3771.

United States District Court, E.D. Pennsylvania.

Aug. 13, 2001.

---

Marc E. Weinstein, Timothy M. Kolman & Associates, Langhorne, PA, for plaintiff.

Moira Clare Duggan, Jennifer Kleppe, Daniel C. Moraglia, Bennett, Bricklin & Saltzburg, Philadelphia, PA, for defendant.

## MEMORANDUM

REED, Senior District Judge.

Now before the Court is the motion of defendant World Book Company, Inc., for summary judgment. Upon consideration of the motion and the response of plaintiff Arlene Holtzman and the supporting briefs, as well as the documents and evidence submitted by the parties, I conclude as a matter of law that plaintiff was not an employee of World Book within the meaning of Title VII, and therefore cannot proceed with her claim under that statute. Accordingly, motion of defendant will be granted.

### Background

Arlene Holtzman began working for World Book as a part-time sales representative in 1983. Her job involved selling

World Book educational products to parents, schools and libraries in Bucks County, Pennslyvania. Plaintiff continued selling World Book products until 1998, when she was advised by her supervisor that she was losing her territory and would no longer be selling World Book products. She contends that the loss of her territory was effectively a termination and was discriminatory, and has brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §§ 951, *et seq.* ("PHRA").

The magistrate judge to whom this case was assigned for discovery purposes stayed discovery on all issues but the threshold issue of whether Holtzman was an employee within the terms of Title VII. Defendant argues that plaintiff became an independent contractor in 1995, while plaintiff contends that she remained an employee through 1998. Thus, the question on the motion is what plaintiff's status was at the time of the alleged adverse employment action in 1998. Limited discovery on that issue is now complete, the parties have fully briefed it, and it is now ripe for consideration.

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment must be granted. The proper inquiry on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477

U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

### Analysis

■ Title VII protects workers who are "employees," but does not protect independent contractors. *See Spirides v. Reinhardt,* 613 F.2d 826, 829–830 (D.C.Cir. 1979). Unfortunately, Title VII vaguely defines "employee" as "an individual employed by an employer ..." 42 U.S.C. § 2000e(f). The Supreme Court has chided Congress for providing a definition of employee that "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

As a result of Title VII's fuzzy definition of employee, federal courts have struggled with how to ascertain whether a person is an employee for the purposes of Title VII.[1] In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), the Supreme Court, interpreting identical language in the ERISA context, adopted the common law agency test to determine whether an individual is an employee, which focuses primarily on the "hiring party's right to control the manner and means by which the product is accomplished." *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Supreme Court has observed that the following non-exhaustive list of factors is relevant to this inquiry:

(1) the skill required;

(2) source of the instrumentalities and tools;

(3) location of the work;

(4) duration of the relationship between the parties;

(5) whether the hiring party has the right to assign additional projects to the hired party;

(6) the extent of the hired party's discretion over when and how long to work;

(7) the method of payment;

(8) the hired party's role in hiring and paying assistants;

(9) whether the work is part of the regular business of the hiring party;

(10) whether the hiring party is in business;

(11) the provision of employee benefits; and

(12) the tax treatment of the hired party.

*Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344. The Supreme Court confirmed in *Walters v. Metropolitan Educ. Enters.*, 519 U.S. 202, 211, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997), that the *Darden* analysis is the proper test to apply in ascertaining whether an individual is an employee within the meaning of Title VII.

Whether a worker is an "employee" is a question of law to be determined by the court in the absence of disputed material underlying facts. *See Cox v. Master Lock Co.*, 815 F.Supp. 844, 845 (E.D.Pa.1993), *aff'd* 14 F.3d 46 (3d Cir. 1993) (Age Discrimination in Employment Act context). The burden is on the plaintiff to prove that she falls within the protections of Title VII. *See Kumar v. Temple Univ. Cancer Center*, No. 95–7832, 1997 WL 563391, *6, 1997 U.S. Dist. LEXIS 13576, at *17 (E.D.Pa. Aug. 29, 1997) (citing *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 35 (3d Cir.1983)).

The application of the *Darden* factors to this case requires some context. Prior to 1995, plaintiff was a part-time sales representative and then a district manager for World Book. (Deposition of Arlene Holtzman, Dec. 28, 2000, at 9.) ("Holtzman Deposition"). She was responsible for selling World Book products to parents, schools and libraries. (*Id.*) In 1995, World Book decided to separate the parent

---

1. The Court of Appeals for the Third Circuit addressed the different kinds of tests used to determining employee status in *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir.1983) (ADEA context). *Zippo* applied a hybrid test combining the traditional common law agency/right to control test and the more modern "economic realities test." As noted *infra*, the Supreme Court has come down squarely in favor of the common law right-to-control test, however, the hybrid and right-to-control tests contain many of the same factors, and I conclude that the outcome would be the same under either test.

division from the school and library division and reorganize its sales force by contracting with individual School and Library Regional Directors ("RSLDs"), who, in turn, separately contracted with sales representatives. (Deposition of Rosemarie Lee, Feb. 14, 2001, at 75, 80, 87.) ("Lee Deposition"). Many of the positions under the new structure were filled by the same people who had worked for World Book under the previous arrangement; branch managers for World Book became separately incorporated RSLDs and district managers and sales representatives for World Book became sales representatives for the separately incorporated RSLDs. (*Id.* at 93.) Under the terms of the RSLD agreements between World Book and RSLD, the RSLDs were no longer employees of World Book. (*Id.* at 80.) World Book offered payroll services to the RSLDs, and thus processed the commission checks of many of the sales representatives. (*Id.* at 85.)

In 1995, when Holtzman was notified of the changes taking place in her division, she sought out an opportunity to work with Rosemarie Lee, formerly a branch manager. (Holtzman Deposition, at 36–37.) As part of her effort to become an RSLD for World Book under the new arrangement, Lee had formed an "S" corporation called Leer Services, Inc., entered into an independent contractor agreement with World Book, and gathered a sales force comprised largely of former World Book sales representatives. (Lee Deposition, at 100–01.) Holtzman was one of those representatives or "specialists," and she signed a contract with Lee's corporation, Leer Services, to sell World Book products to schools and libraries, but not parents. (Holtzman Deposition, 41–42;

Lee Deposition, at 109.) Holtzman eventually became a territory coordinator, a position slightly above sales representative but still reporting to Lee, an RSLD.

The core of this dispute is what Holtzman's status was under the arrangement with Leer Services. Did she remain, *de facto,* an employee of World Book? Or was she an independent contractor with World Book or Leer Services?

I look first to the written agreements among the players in this case. World Book's standard contract with RSLDs like Lee provided expressly and unequivocally that the RSLDs were independent contractors. (Plaintiff's Exh. 4, Independent School/Library Sales Representative Agreement, at ¶ 14.)[2] Lee herself testified at her deposition that it was her understanding that under the new arrangement, she would no longer be a World Book employee, and instead became an independent contractor. (Lee Deposition, at 80, 278.) Furthermore, she testified that under the arrangement with World Book, her sales force would be comprised of independent contractors, not employees. (*Id.* at 105, 107.)

As part of Lee's sales force, then, Holtzman was one of a number of independent contractors with Leer Services. Just as with the agreement between Leer Services and World Book, the contract between Leers Services and the members of its sales force, including Holtzman, expressly provides that the sales representative was an independent contractor, not of an employee. That sale representative agreement contains the following provision:

INDEPENDENT CONTRACTORS: Nothing contained here shall be construed to create the relationship of employer and employee between the

---

**2.** The contract provides: "Representative shall be an independent contractor in the performance of this Agreement and is not and shall not be deemed to be the legal represen-

tative, partner or agent of the Company for any purpose whatsoever." (Plaintiff's Exh. 4, Independent School/Library Sales Representative Agreement, at ¶ 14.).

Company and the Specialist and/or the Specialist and World Book, it being understood that the specialist is an independent contractor ...

(Defendant's Exh. E, Independent School/Library Specialist Agreement, at ¶ 6.) Under the clear terms of this agreement—which was between Holtzman and Leer Services, not World Book—the parties' unmistakable intent was that Holtzman would be an independent contractor, not an employee. While the parties have not supplied the Court with a copy of the actual, signed agreement between Holtzman and Leer Services,[3] Holtzman herself produced an unsigned version of the agreement between Leer Services and its sales representatives and recalled signing such an agreement at her deposition. (Holtzman Deposition, at 41–42.) Holtzman also recalled at her deposition being told that she would be classified as an independent contractor. (*Id.* at 45.) Furthermore, Lee testified that Holtzman must have signed the agreement in order to work for her, and that Holtzman was an independent

contractor. (Lee Deposition, 278.) Thus, there is no material dispute as to whether Holtzman signed the agreement. Furthermore, I conclude that the agreement clearly indicates Holtzman was an independent contractor. The agreement, while not dispositive of plaintiff's employment status, is strong evidence that she was an independent contractor.[4]

Thus, on the face of the contracts among World Book, Rosemarie Lee and her corporation Leer Services, and Holtzman, it appears that at best, Holtzman was an independent contractor to an independent contractor to World Book. Though she was selling World Book products, her contractual relationship was with Leer Services. Under the clear terms of the contracts, then, Holtzman was not a World Book employee.

An examination of the factors identified in *Darden* further confirms what was made explicit in Holtzman's agreement with Leer Services. Plaintiff relied on no instrumentalities or tools provided by

---

**3.** The Court finds it odd that no party has produced a copy of the agreement signed by plaintiff, however, because there is no dispute as to whether the agreement was signed and what the terms of the agreement were, I do not dwell on its mysterious absence.

**4.** A number of courts have relied on contract language in concluding that an individual was not an employee and therefore could not proceed against a defendant under Title VII. *See Schwieger v. Farm Bureau Ins. Co. of Nebraska,* 207 F.3d 480, 487 (8th Cir.2000) ("The 1992 contract between Schwieger and Farm Bureau evidences the parties' original intent to enter into an independent contractor relationship, and indeed that is what they did...."); *Adcock v. Chrysler Corp.,* 166 F.3d 1290, 1293 (9th Cir.1999) (language in contract "though not dispositive, reflects the parties intention that Adcock would have been an independent contractor, not an employee") (citations omitted); *Hayden v. La–Z–Boy Chair Co.,* 9 F.3d 617 (7th Cir.1993) (signed agreement providing that plaintiff was "not

an employee or agent" of defendant demonstrated independent contractor status); *Peck v. Democrat and Chronicle,* 113 F.Supp.2d 434, 440 (W.D.N.Y.2000) (contract between plaintiff and defendant "spelled out that [plaintiff] would be treated as an independent contractor"); *Tagare v. Nynex Network Sys. Co.,* 994 F.Supp. 149, 158 (S.D.N.Y.1997) ("the Agreement explicitly and equivocally expressed the parties' intent to create an independent contractor relationship"); *Torres v. Metropolitan Life Ins. Co.,* No. 96–1401, 1997 WL 1047717, *4, 1997 U.S. Dist. LEXIS 23098, at *9 (D.N.J. Sept. 19, 1997) ("By signing the Agreement, Torres expressly agreed that he would 'be an independent contractor and not an employee.'"); *Wright v. State Farm Mut. Automobile Ins. Co.,* 911 F.Supp. 1364, 1371–72 (D.Kan.1995) (plaintiff was employee and then executed an independent contractor agreement; court held that he ceased being an employee on the day he became an independent contractor, and court had no jurisdiction over Title VII claims).

World Book; to the contrary, plaintiff bought her own office supplies, (Holtzman Deposition, at 53–54), and, in the wake of the restructuring at World Book in 1995, Holtzman was no longer provided a company car by World Book (*id.* at 53.). Plaintiff worked out of her home. While Leer Services (not World Book) set general guidelines and goals, sales representatives such as plaintiff met only twice a year with Lee, had complete discretion over when and how to work, and generally managed their own sales workload. (Lee Deposition, at 121, 155, 158, 168, 281.) Holtzman always was paid by commission, not salary. (Holtzman Deposition, at 11.) She received no health or retirement benefits from World Book or Leer Services after 1996. (*Id.* at 53.) And plaintiff's tax records since 1996 have reflected that she is a self-employed independent contractor.[5]

I conclude that these factors far outweigh those indicating employee status. Plaintiff's long relationship with World Book is not dispositive, especially in light

of the fact that after 1996, her contractual relationship was with Leer Services, not World Book. The fact that her commission checks were processed by World Book does not mean that World Book was her employer; deposition testimony demonstrates that this was merely a payroll service offered as an option by World Book to its independently contracted RSLDs, and plaintiff offers nothing to rebut that testimony. (Lee Deposition, at 85.) Nor does the fact that her work was part of the regular business of World Book outweigh the other factors.[6]

Plaintiff may well have subjectively believed that she remained a World Book employee even after the 1995 structural changes took place. However, I conclude a reasonable jury could only find that the objective, legal reality of her status under the new regime was that of an independent contractor, not an employee.[7]

█ Plaintiff argues that even if she was not an employee, she was denied an opportunity to become an employee with

---

**5.** Plaintiff was provided IRS 1099 forms by Leer Services, indicating that she was not an employee of Leer Services or World Book. Since 1996, plaintiff has claimed to be self-employed on her tax return forms, attaching Self Employment Tax Schedule SE forms to the 1040 forms she filed each year. (Defendant's Exh. J, Plaintiff's Tax Records.) Prior to 1996, she had not claimed to be self-employed. This further supports my conclusion that plaintiff was indeed not an employee of World Book or Leer Services, but was an independent contractor.

**6.** Plaintiff relies heavily on her assertion that "nothing changed" between the way things operated between plaintiff and World Book before and after the structural changes in late 1995. She contends that the 1995 decision of World Book to restructure its school/library/parent sales force had little practical impact on plaintiff's relationship with World Book; the sales force was essentially structured the same as before, she still sold World Book products to schools and libraries, still

received the same communications from World Book, and the pay was the same. Assuming plaintiff's representations are accurate, the question remains whether the relationship of plaintiff to defendant as it stands now is that of an independent contractor or an employee under the *Darden* factors. The "nothing changed" argument rests on the assumption that plaintiff was unquestionably an employee within the meaning of Title VII prior to the structural changes in late 1995, but I have drawn no conclusions about plaintiff's status prior to 1995, and it is not clear whether she was an independent contractor or an employee under the pre–1995 regime. Thus, comparisons to how things were before 1995 are not helpful, because the focus of this case is on what plaintiff's status was after 1995.

**7.** Plaintiff devotes an inordinate amount of pages in its brief to a section entitled "An Initial Word on Credibility," in which plaintiff argues that defendant and its representatives have failed to offer a cogent explanation for the decision to alter the sales structure of

World Book, and therefore may press on with her Title VII claim on that basis. The job plaintiff says she was denied was that of an RSLD. However, as discussed above, the evidence—including the clear language of the RSLD contract and the testimony of Rosemarie Lee, an RSLD—indicates that RSLDs were independent contractors and not employees. (Plaintiff's Exh. 4, Independent School/Library Sales Representative Agreement, at ¶ 14; Lee Deposition, at 80, 278.) Thus, I conclude that a reasonable jury could not find that plaintiff was denied an opportunity to become an employee of World Book within the meaning of Title VII.

### Conclusion

My review of the evidence in light of *Darden* clearly demonstrates that Holtzman was an independent contractor and not an employee of World Book when her relationship with World Book and Leer Services was terminated in 1998. Accordingly, I conclude that defendant is entitled to summary judgment on plaintiff's Title VII claim because no reasonable jury could conclude that plaintiff was an employee as defined by Title VII. Because plaintiff's § 1981 claim for workplace discrimination is analyzed under the same framework as Title VII, her § 1981 claim suffers the same fate. *See Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (3d Cir.1997). All that remains, then, are plaintiff's state law claims under the PHRA, which, because there remain no federal issues in this case, I decline to exercise supplemental jurisdiction over and will dismiss without prejudice.[8]

An appropriate order follows.

### ORDER

**AND NOW,** on this 13th day of August, 2001, upon consideration of the motion of defendant The World Book Company, Inc., for summary judgment (Document No. 15) and the response of plaintiff Arlene Holtzman (Document No. 19), and having considered the pleadings and evidence on the record pursuant to Rule 56(c) of the Fed-

---

World Book in late 1995. I conclude that World Book's reasons for changing its structure have no bearing on the limited question whether or not plaintiff was an independent contractor or an employee for the purposes of Title VII at the time of the alleged adverse employment action. This is particularly true in light of the clear, documentary evidence of plaintiff's status and the absence of disputed facts as to the *Darden* factors. The *Darden* analysis focuses on objective factors, and thus defendant could not mask plaintiff's employment status by providing a false justification for the change it made. Therefore, World Book's motives in making structural changes to its sales force are not relevant to the issue before this Court today.

Plaintiff also argues that World Book "unilaterally" transformed her into an independent contractor. The thrust of this argument is that any change in plaintiff's status could not have been valid because World Book did not seek plaintiff's input. Even if it were true that an employer cannot unilaterally alter an individual's status from employee to independent contractor—and I am not certain that is true—here, there is evidence that plaintiff voluntarily signed a document under which she agreed to become an independent contractor. Thus, plaintiff's coercion argument is without a basis in the record.

8. I note that at least one judge of this district has held that Title VII and the PHRA, while containing different textual definitions of "employee," are to be interpreted consistently as to whether an individual is an employee, and thus if a person is not an employee under Title VII, she may not be an employee under PHRA. *See Hudson v. Radnor Valley Country Club*, No. 95–4777, 1996 WL 172054, *5, 1996 U.S. Dist. LEXIS 4559, at *14 (E.D.Pa. April 11, 1996) ("The same principles for determining employee status under the ADEA and Title VII apply to the PHRA.") (citing *Stouch v. Brothers of the Order of Hermits of St. Augustine*, 836 F.Supp. 1134, 1142 n. 8 (E.D.Pa.1993)). I reach no conclusion on that question today, and rather decline to exercise supplemental jurisdiction of plaintiff's PHRA claims.

eral Rules of Civil Procedure, and having concluded, for the reasons set forth in the foregoing memorandum, that there remain no genuine issues of material fact as to whether plaintiff was an employee of defendant and thus entitled to bring suit against defendant under Title VII, **IT IS HEREBY ORDERED** that the motion of defendant is **GRANTED** and **JUDGMENT** is hereby **ENTERED** in favor of The World Book Company, Inc., and against Arlene Holtzman, on plaintiff's First and Second Causes of Action under Title VII and 42 U.S.C. § 1981, respectively.

**IT IS FURTHER ORDERED** that plaintiff's Third Cause of Action under the Pennsylvania Human Relations Act is **DISMISSED** without prejudice to plaintiff's right to present the claims contained therein to the courts of the Commonwealth of Pennsylvania.

This is a final Order.