# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1311

_____

Pooneh Hendi Glascock

*Plaintiff - Appellant*

v.

Linn County Emergency Medicine, PC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: October 16, 2012
Filed: October 31, 2012

_____

Before MURPHY, BEAM, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Dr. Pooneh Hendi Glascock, a female physician of Iranian origin, contracted with Linn County Emergency Medicine, PC (LCEM) to provide emergency medical services at Mercy Medical Center. After LCEM terminated Glascock, she brought claims under Title VII and the Iowa Civil Rights Act alleging discrimination based on

sex, pregnancy, and national origin.  The district court[1] granted summary judgment to LCEM, concluding that Glascock could not assert a claim under either statute because she was an independent contractor, and Glascock appeals.  We affirm.

Glascock entered an "Independent Contractor Physician Service Agreement" with LCEM in May 2007 to work as an emergency room physician at Mercy Medical Center in Cedar Rapids, Iowa.   The agreement was to last one year and renew for an additional year unless terminated by either party with 90 days notice.  It provided that Glascock would be offered an ownership position in LCEM after one year of "satisfactory performance" and "upon the approval of the majority of the current owners."  Glascock has stated that it was her "intent and understanding" that she would become a part owner of LCEM after one year.

LCEM provided professional liability insurance for Glascock but no benefits or vacation pay.  The agreement guaranteed Glascock 15 shifts per month at an hourly rate of $130. Glascock submitted her monthly availability and scheduling preferences to LCEM, and LCEM assigned shifts.  Glascock was free to trade or give away shifts without informing LCEM, but she testified that she was "expected to do more than 15 shifts if there [was] a need."  She also remained free to engage in other professional activities and testified that she "maybe once or twice" worked shifts for another emergency medicine group during the term of her agreement with LCEM.  Glascock filed her own self employment tax returns.

The agreement gave LCEM no "control or direction over the method or manner by which [Glascock] performs [her] professional services and duties," and Glascock testified that she was "pretty much on [her] own to carry out . . . emergency services at Mercy."  As the attending physician she selected a patient's chart and reviewed it,

---

[1]The Honorable Edward J. McManus, United States District Court Judge for the Northern District of Iowa.

-2-

determined the appropriate course of action, and then met with the patient. She received no instruction on how to examine, treat, or diagnose patients. The agreement provided that Glascock "may be subject to quality assurance review committees" to ensure compliance with Mercy's rules and regulations. LCEM shareholders also discussed "opportunities for improvement" with Glascock that set forth objectives she would need to meet to earn shares in the company.

Glascock alleges that throughout her relationship with LCEM she was subjected to ongoing sexual harassment by other LCEM physicians. One called her a "princess" on multiple occasions, another referred to her as "cutie" and "babe," and a third made disparaging remarks about pregnancy. LCEM shareholders also allegedly made comments about Glascock's national origin, once referring to Iranians as "sand people." At the end of Glascock's first year LCEM shareholders voted not to extend an ownership interest to her but instead gave her a six month probationary term. Glascock testified that during the last week of her probationary term she told LCEM's administrator and another of its physicians that she was pregnant. LCEM's shareholders subsequently voted to terminate her.

Glascock brought claims against LCEM under Title VII, 42 U.S.C. § 2000e et seq., and the Iowa Civil Rights Act, Iowa Code ch. 216, alleging discrimination on the basis of sex, pregnancy, and national origin. LCEM moved for summary judgment, arguing that Glascock was not covered by Title VII or the Iowa statute because she was an independent contractor. The district court agreed and granted LCEM's motion. Glascock appeals.

This court reviews de novo a district court's grant of summary judgment. <u>Minn. ex rel. N. Pac. Ctr., Inc. v. BNSF R.R. Co.</u>, 686 F.3d 567, 571 (8th Cir. 2012). On our review we look at facts in the light most favorable to Glascock and give her the benefit of all reasonable inferences from the record. <u>Id.</u> Summary judgment is only appropriate where no genuine dispute exists "as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u>

Title VII and the Iowa Civil Rights Act prohibit employment discrimination based on race, color, religion, sex, or national origin, but independent contractors are not protected under either statute. Schwieger v. Farm Bureau Ins. Co. of Neb., 207 F.3d 480, 483 (8th Cir. 2000) (Title VII); Loeckle v. State Farm Auto. Ins. Co., 59 F. Supp. 2d 838, 846 (N.D. Iowa 1999) (Iowa Civil Rights Act). Whether a hired party is an independent contractor or employee is an appropriate question for summary judgment. Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 488 (8th Cir. 2003).

To determine whether a hired individual is an employee or an independent contractor, we primarily consider whether the hiring party was able to "control the manner and means by which a task is accomplished." Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (citation omitted); Schwieger, 207 F.3d at 484. We also consider (1) the skill required, (2) the source of the instrumentalities and tools, (3) the location of the work, (4) the duration of the relationship between the parties, (5) whether the hiring party has the right to assign additional projects to the hired party, (6) the extent of the hired party's discretion over when and how long to work, (7) the method of payment, (8) the hired party's role in hiring and paying assistants, (9) whether the work is part of the regular business of the hiring party, (10) whether the hiring party is in business, (11) the provision of employee benefits, and (12) the tax treatment of the hired party. Darden, 503 U.S. at 323–24. We finally look to the "economic realities" of the relationship, Wilde v. Cnty. of Kandiyohi, 15 F.3d 103, 105 (8th Cir. 1994), and the terms of the agreement, Wortham v. Am. Family Ins. Grp., 385 F.3d 1139, 1140 (8th Cir. 2004).

We note first that the issue of control is less useful in the context of emergency room physicians than in some other settings because a hospital "must assert a degree of conflicting control over every doctor's work . . . to discharge its own professional responsibility to patients," regardless whether the physician is an employee or independent contractor. Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 260 (4th Cir. 1997). To the extent control is relevant, however, the evidence appears inconclusive in the case before the court. LCEM set Glascock's schedule based on her

-4-

availability and preferences, urged her to attend monthly meetings, and regularly reviewed her performance. Glascock determined which patients she would see and conceded that she was "pretty much on [her] own" at Mercy. This court has deemed the issue of control "inconclusive" elsewhere even when the hiring party provided training courses, urged its workers to keep regular business hours, and regularly reviewed its workers' "profitability, dress, and 'attitude.'" Schwieger, 207 F.3d at 484–85. We agree that it is also inconclusive here.

Turning to the Darden factors, we have not required any precise number of factors to create a genuine issue of material fact as to whether a hired party is an employee or an independent contractor. Merely showing "some aspects [that] suggest an employment relationship" is insufficient to survive summary judgment, however. Schwieger, 207 F.3d at 487. We have previously concluded that a hired party was an independent contractor as a matter of law when five Darden factors favored that status, two "weighed slightly toward" it, two "appeared evenly balanced," and three favored employee status. Id. at 486.

In this case a number of Darden factors support a conclusion that Glascock was an independent contractor. She received no benefits from LCEM and paid her own self employment taxes. She was licensed "at her own expense . . . and had been certified by professional associations," a factor which "weighs heavily in favor of independent contractor status." Id. at 485. LCEM had no "right to assign additional projects" to Glascock, and she was permitted to block out shifts, specify her preferred work schedule, and trade or give away shifts without informing LCEM. The economic realities and terms of her agreement also lend to a conclusion that Glascock was an independent contractor. Her agreement lacked "any leave or vacation policy and . . . could be terminated at will by either party," id. at 486, and it was titled an "Independent Contractor Physician Service Agreement," see Wortham, 385 F.3d at 1140.

Other factors which might favor employee status in this case are fewer in number and less in weight than those favoring independent contractor status. The

agreement between Glascock and LCEM set the "duration of the relationship" at one year although Glascock testified that she expected to have a long term relationship with LCEM. Viewed most favorably to Glascock, this fact favors employee status. Schwieger, 207 F.3d at 485. Glascock also received an hourly wage directly from LCEM, and LCEM was in the business of providing contract emergency room physicians to medical centers. The remaining Darden factors, "source of instrumentalities and tools," "location of work," and "the hired party's role in hiring and paying assistants," are inapplicable because a third party provided all three. Mercy provided the equipment and supplies for Glascock to work; Glascock brought only her own stethoscope.

In sum, control is inconclusive here and the Darden factors point toward independent contractor status. Moreover, the economic realities suggest that Glascock was an independent contractor. Like in Schwieger, 207 F.3d at 487, we conclude that the balance of factors show "an independent contractor arrangement." We therefore conclude that Glascock was an independent contractor and that the district court did not err in granting summary judgment to LCEM.

Accordingly, the judgment of the district court is affirmed.

_____