**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2124
_____

JANNIFER HILL-KEYES,

Appellant

v.

COMMISSIONER OF THE UNITED STATES
SOCIAL SECURITY ADMINISTRATION

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-02852)
District Judge:  Honorable Paul S. Diamond

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2016
Before:  AMBRO, GREENAWAY, JR. and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 16, 2016)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Jannifer Hill-Keyes filed a counseled complaint for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq. She alleged that she was harassed and terminated from her employment with the Social Security Administration ("SSA") on the basis of her sex (female) and a perceived disability (a psychological disorder). She also presented a claim of retaliation for having registered a complaint of sex discrimination. The SSA Commissioner (the "Commissioner") sought summary judgment on the basis that Hill-Keyes could not recover under Title VII or the Rehabilitation Act because she was an independent contractor of SSA, not an employee. Hill-Keyes opposed the motion on the basis that discovery was necessary, or, alternatively, that genuine issues of fact remained regarding her employment status. The District Court denied the Commissioner's motion without prejudice to allow for limited discovery on the issue.

After discovery (namely the depositions of two persons who provided affidavits in support of the first motion for summary judgment), the Commissioner renewed the motion for summary judgment, again arguing that Hill-Keyes was not an SSA employee. Hill-Keyes opposed the motion, arguing that genuine issues of fact remained, and, even if she was an independent contractor, she could bring her claims for discrimination and retaliation under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which governs nondiscrimination in federal activities and programs. In reply, the Commissioner argued that Hill-Keyes had never before invoked § 504, that a § 504 claim was subject to

2

dismissal for failure to exhaust, and that her case was dissimilar to the cases she cited in support of a § 504 claim in any event. The District Court granted the renewed motion for summary judgment.

Hill-Keyes, now representing herself, appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276 (3d Cir. 2001). Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In her brief and supplemental brief,[1] Hill-Keyes focuses on describing behavior that she perceived as harassment and retaliation within and without the workplace (noting not only such things as co-workers leering and calling her such names as "schizophrenic" but also an illegal entry into her home and interference with her husband's e-mail account). However, among her other arguments in her brief, Hill-Keyes includes a challenge to the District Court's ruling on what she terms her "job classification status,"

---

[1] After this appeal was first briefed, the District Court docketed its opinion (previously, only its judgment appeared on the docket). We then allowed Hill-Keyes to file a supplemental brief. She filed a supplement and hundreds of pages of exhibits, all of which we have reviewed. She complains, however, that the District Court's failure to immediately docket its opinion "denied [her] the right to review [it] with Counsel." Supplemental Brief at 10. We note that she was not precluded from discussing the opinion with counsel on its issuance. And, as she states, she did consult with counsel about the District Court's bare ruling previously.

3

and, in her supplemental filing, she more specifically challenges the District Court's analysis (and the conclusion that she was not an SSA employee). The District Court's ruling turns on her employment status, and it is that issue that we will consider.[2]

In order to prevail on her claims under Title VII and § 501 of Rehabilitation Act, Hill-Keyes had to have an "employment relationship" with SSA. Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013); see also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2530 (2013) (citing 42 U.S.C. § 2000e-2(a)-(d) and explaining that Title VII forbids discrimination by *employers*). To determine whether Hill-Keyes was an employee of SSA, the test of Nationwide Mutual Insurance Company v. Darden, 503 U.S. 318 (1992), applies. See Faush v. Tuesday Morning, Inc., 808 F.3d 208, 213 (3d Cir. 2015).

We have recently summarized the Darden test, which helps to draw "a line between independent contractors and employees" hired by a given entity. Faush, 808 F.3d at 215 (citing Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440, 445 n.5 (2003) (quotation marks omitted). Specifically, we explained the following:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Darden provides a non-exhaustive list of relevant factors, including the skill required; the

---

[2] On appeal, Hill-Keyes also raises some arguments for the first time, including the issue that the SSA somehow violated EEOC protocols by directing her to report her complaint to SSA's Central Contracting Office. We do not consider issues that were not raised below. DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal.")

4

source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Our Court has generally focused on which entity paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities. However, [s]ince the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.

Faush, 808 F.3d at 214 (citations and quotation marks excluded).

Although some factors in the Darden test weigh in favor of a conclusion that Hill-Keyes was an SSA employee, on balance, an analysis of the factors leads to the conclusion that she was an independent contractor. Strong evidence of Hill-Keyes's status is the Blanket Purchase Agreement ("BPA") in this case. See Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009) (quoting and citing Holtzman v. World Book Co., 174 F. Supp. 2d 251, 256 (E.D. Pa. 2001), for the proposition that an agreement can be strong evidence that a plaintiff was an independent contractor); see also Holtzman, 174 F. Supp. 2d at 256 & n.4 (stating the same and listing cases that relied on contracts to define a litigant's employment status). That contract, in relevant part, between SSA and a company of which Hill-Keyes is president (and which is now known as Strategic HR, LLC), defined the terms of the provision of consultant services by a contractor. Also,

5

Hill-Keyes, in a modification letter regarding a change in her company's name, described her company as a contractor to SSA.

SSA did not hire Hill-Keyes. Instead, SSA solicited proposals for contracts on a website that lists government contract opportunities, and Strategic HR, LLC, responded with a bid that was accepted. SSA also did not pay Hill-Keyes directly (or provide her with any benefits). SSA made payments to Strategic HR, LLC, pursuant to the BPA's Invoice Submission clause. Under this clause, Strategic HR, LLC, would submit an invoice for services provided in the preceding month based on the number of cases reviewed multiplied by the rate per case set in the BPA. Cf. Oshiver v. Levin, Fishbein, Sedran & Berman, 910 F. Supp. 225, 229 (E.D. Pa. 1996) (stating that the submission of invoices on company letterhead was an indication that the worker was an outsider to the firm). At the end of the year, Hill-Keyes did not receive a W-2 tax form from the SSA; it sent a 1099 tax form to Strategic HR, LLC. See id. at 229-30 (concluding that the willingness to be a 1099-employee is evidence of the acceptance of independent contractor status).

Hill-Keyes, a psychologist, provided case review services to the SSA as a Medical Consultant for approximately seven years (from 2005 until 2012), but the "duration of employment does not in and of itself suggest employee status." Hilton Int'l Co. v. NLRB, 690 F.2d 318, 322 (2d Cir. 1982). Also, although she did her work at a regional SSA office, it is undisputed that the workspace (a computer, telephone, file cabinets, and

6

a chair in a cubicle, not an office) was provided only because case review services had to be performed on SSA premises because of the risk of transporting personally identifiable information.

Hill-Keyes's work ordinarily had to be completed within SSA's business hours (by special request, she could perform case review during non-business hours), but she could set her own hours within the times that the building was open. She averred that SSA supervisors "directly assigned her work[3] and set time and productivity requirements for deliverables . . . in accordance with SSA standards." Affidavit of Jannifer Hill-Keyes, at 3, ¶ 11. We are mindful that Hill-Keyes, as the non-moving party, gets the benefit of favorable inferences, but we note that under the unchallenged description of "SSA standards," she had control over how much work she did for SSA and how quickly she completed the case reviews. SSA would issue a "call order" for a number of cases to be reviewed. If Strategic HR, LLC, accepted a call order, Hill-Keyes could review the number of cases in that call order over a specified time period. Even if time and productivity requirements were set, they did not need to be met. SSA was not obligated to issue a call order, and Hill-Keyes was not obligated to accept a call order. If Hill-

---

[3] Her claim of direct assignment may not be reconcilable with SSA statements that SSA did not assign cases to Strategic HR, LLC, or Hill-Keyes, and that Hill-Keyes could choose cases from an automated computer system. Also in dispute is whether her work was part of SSA's regular business because it was part of the assessment of requests for benefits or separate from its regular business because case reviews were provided through contracts under the BPA. However, as noted above, no one factor is decisive.

Keyes did not complete the full number of cases in the call order, the only consequence was that Strategic HR, LLC, would not be paid for the cases not completed.

The BPA provided for monitoring of a contractor's level of performance and Hill-Keyes, who provided a service requiring professional skill, received initial training (including a professional in her discipline to mentor and coach her). Hill-Keyes averred that she reported to two SSA employees, one who reviewed "technical aspects of her work to ensure . . . compliance with SSA guidelines" and "inspect[ed] the quality of [her] work," and one who "regularly reviewed the productivity, overall quality, and timeliness of [her] work." Affidavit of Jannifer Hill-Keyes, at 2, ¶ 8, & 3, ¶ 14. In her deposition, the former employee described her responsibility to conduct a once-a-year review for policy compliance separate from a review of the medical analysis provided (the case reviews being subject to review by random sampling). The latter also conceded at his deposition that he conducted a once-a-year review for quality and timeliness that is required by the BPA. They further stated, however, that they did not supervise the individuals completing case reviews or conduct SSA employee performance evaluations for those persons.

Not every Darden factor supports the conclusion that Hill-Keyes was an independent contractor for SSA. However, on balance, it cannot be said that there was a genuine dispute of material fact on the issue. Particularly in light of the contract between the parties, the day-to-day control that Hill-Keyes had over her work schedule and work

8

product, and the structure of Hill-Keyes's compensation and its tax treatment, the

Commissioner showed that Hill-Keyes was an independent contractor for SSA. Because

Hill-Keyes lacked the requisite employment relation with SSA to recover on her Title VII

and Rehabilitation Act claims,[4] we conclude that the District Court properly granted

summary judgment in favor of the Commissioner. Accordingly, we will affirm the

District Court's judgment.

---

[4] On appeal, Hill-Keyes does not appear to raise the § 504 Rehabilitation Act claim she included in her response to the Commissioner's renewed motion for summary judgment. Nonetheless, if we were to consider it, we would conclude that the District Court did not err in rejecting it. Even assuming arguendo that she could bring such a claim as an independent contractor and without exhausting it before the EEOC, the cases she cited in the District Court do not support her recovery under § 504 in these circumstances.