Sherry **OSHIVER**

v.

**LEVIN, FISHBEIN, SEDRAN & BERMAN.**

Civil Action No. 92–7288.

United States District Court, E.D. Pennsylvania.

Jan. 11, 1996.

William L. McLaughlin, Jr., Wm. L. McLaughlin Law Offices, Paoli, PA, for Plaintiff.

Patrick W. Kittredge, Regina M. Harbaugh, Kittredge, Donley, Elson, Fullem & Embick, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Sherry Oshiver is an attorney who began work for the law firm of Levin, Fishbein, Sedran and Berman (the Firm) in 1989. Her initial contact with the Firm was a telephone call she made to partner Howard Sedran to inquire about any possible openings for an associate. He told her that the Firm was not hiring associates at that time, but that if she would like, she could do hourly work for the Firm indexing complex litigation discovery documents when that type of work was available. She would earn $25.00 an hour and if an associate position became available, she would be considered for it. Oshiver accepted this offer and began work.

Over the next year, Oshiver worked on several different cases, rarely in the Firm's offices. Rather, she would travel to the offices of the Firm's various co-counsel where the documents were located. She would make handwritten indices/summaries of the documents that she submitted to the Firm on a fairly regular basis. Every few weeks, she would submit an invoice to the Firm on her own letterhead indicating the number of hours she worked and demanding payment for services rendered.

At the end of both 1989 and 1990, the Firm submitted IRS Forms 1099 on her behalf. This is the form used for independent contractors, as opposed to a Form W–2, which is used for employees. In 1989, Oshiver paid her income tax under the independent contractor/self employed theory and filed a Schedule C with her return. The Firm did not pay any taxes on her behalf, provide her with any benefits or give her an office space.

In 1990, the Firm told Oshiver that it had no more work for her. Oshiver sought unemployment benefits, but was denied them following a judicial finding that she was an independent contractor, not an employee. At the unemployment hearing, she learned that shortly after she was told there was no more work, the Firm hired a male hourly worker. Later, she learned that in 1991, the Firm hired a man as an associate even though she was supposed to have been considered for any associate openings. She then brought this lawsuit alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994) and the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. §§ 951–963 (1991) (PHRA).

In this Motion to Dismiss, the Firm contends that this Court has no subject matter jurisdiction over the Title VII claim because

the Firm is not an "employer" under Title VII because it did not have enough employees during the relevant time periods and also that Oshiver was not an employee, but an independent contractor.

■ On a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden to show jurisdiction. *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *Lattanzio v. Security Nat'l Bank*, 825 F.Supp. 86, 88 (E.D.Pa.1993). We may consider the pleadings as well as evidence outside the pleadings, and may "weigh the evidence and satisfy [ourselves] as to [our] power to hear the case." *Mortensen*, 549 F.2d at 891.

■ The standard for determining whether one is an employee has been established by the Supreme Court. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). The standard is a flexible one in which a court considers the totality of all the factors before making a determination. *Id.* at 323, 112 S.Ct. at 1348. We will first consider the question whether Oshiver fits that standard. If we determine that she was not an employee, then we will not venture into the split between the Circuits to decide how to count workers for finding "employer" status. Compare *Zimmerman v. North Am. Signal Co.*, 704 F.2d 347 (7th Cir.1983) with *Thurber v. Jack Reilly's, Inc.*, 717 F.2d 633 (1st Cir.1983), *cert. denied*, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984) (payroll method).

■ Under *Darden*, we determine a hired person's status by considering "the hiring party's right to control the manner and means by which the product is accomplished." *Id.*, 503 U.S. at 323, 112 S.Ct. at 1348. In addition, we consider the following non-exclusive factors:

1) skill required,

2) source of the instrumentalities and tools,

3) location of the work,

4) duration of the relationship between the parties,

5) whether the hiring party has the right to assign additional projects to the hired party,

6) the extent of the hired party's discretion over when and how long to work,

7) the method of payment,

8) the hired party's role in hiring and paying assistants,

9) whether the work is part of the regular business of the hiring party,

10) whether the hiring party is in business,

11) the provision of employee benefits,

12) and the tax treatment of the hired party.

### The Firm's Evidence

First, the Firm attests that it did not have control over the manner and method by which Oshiver performed her services. To support this is Oshiver's own testimony before the Unemployment Compensation Board of Review that she was supervised by the Firm's various co-counsel for the bulk of her time with the Firm. In addition are Oshiver's time sheets, which reflect that of the 1,784.5 hours she worked on two particular cases, she spent only 3.25 hours talking with Firm employees or partners.[1]

Second, as to the duration of her employment, the Firm presents Oshiver's own testimony that she knew she had been hired to work on an hourly basis for the Firm only for as long as her assistance was needed.

Third, the Firm presents a variety of evidence indicating Oshiver's own belief that she was not an employee of the Firm. This includes her testimony that she considered her unofficial title at the Firm to be lawyer, analyst or consultant. In addition is the letterhead on which Oshiver submitted her invoices "for services rendered" to the Firm. This letterhead reads, "Sherry Oshiver, Attorney at Law, 269 S. Ninth Street." The address is not that of the Firm.

---

1. Oshiver's time sheets may not accurately reflect her time spent talking with firm employees and thereby receiving instruction. For example, the timesheets reflect only 1.75 hours talking with associate Brad Lam. However, Oshiver testified that she shared an office with Lam for several weeks in Cincinnati and that during that time he supervised her work.

Fourth, the Firm presents Oshiver's testimony that she was never prevented from other work while she worked for the Firm.[2]

Fifth, the Firm presents her admissions that she had no office at the Firm, but used space in the Firm library when she was on its premises, that she did not represent herself as a Firm employee, that her name was never on the Firm letterhead nor in its Martindale Hubbell listing and that she was not required to sign in or out while at the Firm's offices.

Sixth, the Firm presents evidence that Oshiver never received any benefits from the Firm.

Finally, and most heavily relied on by the Firm, is information relating to Oshiver's tax treatment. In both 1989 and 1990, it paid Oshiver on an independent contractor basis, provided her with a 1099 form, not a W–2, and withheld no taxes from her compensation. Likewise, Oshiver reported her 1989 income on Schedule C, for self-employed persons. Oshiver's resume indicates that she specialized in taxation in law school, which means, the Firm submits, that the significance of the 1099 form could not have been lost on her.

### Oshiver's Evidence

The burden is on Oshiver to demonstrate that this Court has jurisdiction over her claim. With this in mind, we consider Oshiver's evidence. Oshiver has submitted some additional documents as evidence but largely relies on refuting the inferences the Firm encourages us to draw from its evidence. In addition, Oshiver repeatedly asserts that facts such as the 1099 reporting are not "determinative" of her status and therefore, we should disregard that evidence as irrelevant and "meritless." Instead, she argues,

"the determinative factor in the analysis is the degree of control which the defendant Levin firm exercised over plaintiff." Both propositions are incorrect. *Darden* makes it clear that no one factor, such as control, is conclusive. By the same token, it also makes clear that every factor, such as the claimant's tax treatment, has some value to the analysis. *Darden*, 503 U.S. at 323, 112 S.Ct. at 1348.

First, Oshiver asserts that no inference of independent contractor status should be drawn from her admission that she was paid by the hour and only worked when work was available. She argues that "common sense tells us that a worker may be paid by the hour and still be considered an employee for Title VII purposes." Further, she insists that all employees are only employed for the term for which there is work available (with the exception, she posits, of tenured law partners). She professes that if we accept the Firm's evidence as to her work-as-needed status, "an employee would be defined as someone who maintains his job or hours even when there is nothing for him or her to do. Respectfully, this is contrary to the at-will employment doctrine which controls within the Commonwealth."

With respect to her income tax status, Oshiver cites *Romanski v. Prudential Property & Cas. Ins.*, 356 Pa.Super. 243, 514 A.2d 592 (1986) for the proposition that a hirer's contribution to a worker's income taxes is not conclusive to determine employee-status. For this reason, she contends, we should disregard the Firm's tax evidence. To the extent we do consider it, however, she informs this Court that in 1993, she amended her 1989 income tax return to indicate employee status.[3] At no point does she explain why she never objected to the 1099 or why

---

**2.** Oshiver's testimony that she "expected that [she] would not work for other firms working on the same cases at the time [she] was working for [the Firm]" does not affect this evidence, because that expectation arose as a result of her duties of professional responsibility, not duties of loyalty to the Firm.

**3.** Plaintiff also attempts to rebut the Firm's 1099 evidence by arguing that if, in fact, the Firm intended for her to be an independent contractor, it would have made her sign an independent

contractor agreement to protect itself against an IRS audit. She writes, "[b]ecause it is unreasonable to assume that a firm of defendant's caliber would overlook something so elementary [as an agreement], a reasonable inference that the plaintiff was considered a common-law employee may be drawn." This argument is circular, however, because accepting it requires the inference that "a firm of defendant's caliber would overlook something so elementary" as its tax contribution duties.

she treated herself as a self-employed in 1989.

Oshiver maintains that "the determinative factor in the [employment] analysis is the degree of control which the defendant Levin firm exercised over plaintiff." She cites *Crenshaw v. Unemployment Compensation Board of Review*, 50 Pa.Cmwlth. 136, 412 A.2d 682, 684–85 (1980) for the proposition that an employer need not actually exercise control over a hireling for that person to be an employee; rather, the employer must simply have the power to exercise control.

To support her contention that the Firm had control over her, she submits her testimony from the unemployment hearings. This testimony is that: she expected that she would not work for other firms on the same cases that the Firm hired her to work on; that the Firm would tell her what issues to look for in the documents she indexed; that a Firm associate told her what documents to look at; how to look at them and when to work; that the Firm instructed her where she was to work and generally gave her specific daily and weekly schedules; that she attended staff meetings at the various law offices where the documents were located; that she was required to submit her handwritten indices on a fairly timely basis; that a partner at the Firm gave her some "general guidelines" about the work to be done; that other Firm employees typed up her handwritten indices and sometimes proofread them; and that she only worked for the Firm during that period of time. Moreover, she contends in her brief, "certainly it cannot be claimed" that she could have "subcontracted" the indexing work to another lawyer. In addition, she points out that the work she was hired to do is part of the regular business of the Firm.

Last, Plaintiff proffers a petition for attorney's fees the Firm submitted in a separate case before this Court. That petition included a firm resume with "[b]rief biographies of each lawyer in this firm who worked on this litigation." That list includes Oshiver and her background. She contends that her inclusion in this list is conclusive proof that the Firm considered her an employee. The Firm disputes this reading of the petition. It asserts that the list is only that, a list of people who worked on the case for which the Firm could seek compensation. It points out that the biography for each partner begins, "[name,] a member of the firm, ..." and for the associate states, "In 1989, Mr. Lam became associated with [the Firm]". In contrast, there is no such language in the biography of Oshiver or the other lawyers who the Firm contends are independent contractors.

*Analysis*

■ Upon consideration of the above, we conclude that Oshiver has not met her burden of demonstrating that she was an employee of the Firm. From her first contact with the Firm, she was on notice that she was not an associate of the Firm but would work only as needed. We agree that hourly workers can be employees, but this situation appears to indicate otherwise. The fact that Oshiver submitted invoices to the Firm, that they were for "services rendered" and that they were printed on her own letterhead are indications that she was an outsider to the Firm. Moreover, her autonomy is evident in the fact that she chose when to submit her invoices and directed the manner in which she should be paid (by check with certain endorsements on the back).

Oshiver insists that we should rely exclusively on the Firm's *right* to control her work. We do not find, however, that she has proffered any evidence that would demonstrate such a right. Her evidence, as recited above, such as the fact that she was given guidance as to what documents to index, what issues to look for and where she could find the documents, does not actually show that the Firm had any control over Oshiver and her work. At most, it helps to define the terms of the work she was hired to do.

Finally, we find uncontested evidence that she accepted her independent contractor status. She testified that she never held herself out as an employee of the Firm. Most telling was her willingness to be a 1099–employee and that she reported herself as self-employed in 1989. Oshiver is a trained lawyer with an expertise in tax and cannot claim to have been ignorant of the legal significance of her tax status in 1989. *Cf. Cren-*

*shaw,* 412 A.2d at 684 (employee status determined by court, not layperson). We recognize that Oshiver has amended her 1989 tax return, but the fact remains that until she instituted this lawsuit, she was satisfied with reporting herself as self-employed.

We find that viewing the totality of the factors defined in *Darden,* Oshiver was not an employee of the Firm.[4] For this reason, she has no standing under Title VII, and this Court has no jurisdiction. We, therefore, must dismiss the federal claim. We also decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss those as well.

An appropriate Order follows.

### ORDER

AND NOW, this 11th day of January, 1996, upon consideration of Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and responses thereto, the Motion is hereby GRANTED and Plaintiff's Complaint is hereby DISMISSED for lack of subject matter jurisdiction.

---

4. Oshiver asks this Court to postpone decision of this motion to allow her to conduct discovery on the issue of her employment status. She wants to confront the Firm's "named partners and associates who may have controlled the means by which the plaintiff's [sic] accomplished her work and expose the truth." We do not see that this discovery is necessary because Oshiver has first hand knowledge of the way in which her work "may" have been controlled and would have evidence of such control in her possession. At the very least, Oshiver could have submitted an affidavit concerning meetings between her and the Firm, the nature of their supervision of her or the like. That the record reflects little or no evidence of control by the Firm does not appear to be a result of limited opportunity for discovery.