Elise KAHN, Plaintiff,

v.

AMERICAN HERITAGE LIFE INSURANCE COMPANY, Allstate Financial Corporation, Allstate Insurance Company, and the Allstate Corporation, Defendants.

No. Civ.A.04–0311.

United States District Court,
E.D. Pennsylvania.

June 29, 2004.

---

Bruce Preissman, Southampton, PA, for Plaintiff.

Daniel V. Johns, Marjorie A. George, Ballard, Spahr, Andrews & Ingersoll LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This civil action, which Plaintiff instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.*, the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons.Stat. Ann. §§ 951, *et seq.*, and for breach of contract, unjust enrichment, tortious interference with business relationship, and intentional infliction of emotional distress, is now before this Court for disposition of the Defendants' Motion to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6). For the reasons which follow, the motion shall be granted.

### Statement of Facts

This case arises out of an agent contract entered into by the plaintiff, Elise Kahn, and one of the defendants, American Heritage Life Insurance Company (hereinafter AHL), on November 27, 2000. Under this agreement, Elise Kahn was appointed to sell several types of the defendants' insurance products. Starting on or about July 17, 2001, the plaintiff entered into negotiations to sell supplemental benefits products to the Philadelphia Federal Credit Union (hereinafter PFCU). (Complaint ¶ 11). With a substantial number of members and employees, the deal with PFCU had the potential of becoming a lucrative account.

In or about September/October 2001, Plaintiff had a meeting with her immediate supervisor, Mr. D'Epagnier, a Regional Director for AHL at the time. Plaintiff alleges that during this meeting, Mr. D'Epagnier made a derogatory comment about women, especially of plaintiff's religious background. (Complaint ¶ 13). On October 30, 2001, Mr. D'Epagnier notified plaintiff of his intention to reduce her compensation. (Complaint ¶ 14). Sometime between January 8–11, 2002, plaintiff learned that Mr. D'Epagnier had assigned another agent, Jim Bower, the task of closing the PFCU account. (Complaint ¶ 15). On January 11, 2002, plaintiff also had a discussion with Joe Richardson, an AHL Field Vice President, to raise her concerns about the PFCU account. (Complaint ¶ 17). Through this discussion, the plaintiff was informed that Pat Ruscio, an Allstate property and casualty agent who originally set up the plaintiff's appointment with the PFCU, was to be compensated for finalizing the account if the deal actually went through.

On or about January 29, 2002, Donald O. Fennell, a Vice President, wrote a letter to the plaintiff terminating her contracts and appointments. (Complaint ¶ 22). Defendants were eventually successful in closing the PFCU deal. (Complaint ¶ 24). With another agent assigned to the PFCU account, the plaintiff did not become the broker of record for the purpose of selling supplemental benefits product to the PFCU members and its employees.

(Complaint ¶ 25). Plaintiff further lost her chance to receive any commissions and/or other compensation related to the PFCU account, as well as any renewal commissions from the other account(s) that she had enrolled prior to her termination. (Complaint ¶ 26). On January 23, 2004, plaintiff brought this action alleging that she was terminated on the basis of her gender and religious background and defendants now move to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

### Standards Governing Rule 12(b)(1) and 12(b)(6) Motions

■ A motion to dismiss may be granted where the allegations fail to state any claim upon which relief can be granted. *See, Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). In deciding whether to dismiss a complaint under Rule 12(b)(6), we take all well-pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff. *McNamara v. PFS*, 334 F.3d 239, 242 (3d Cir.2003). When the parties' agreement contains a valid forum selection clause designating a particular forum for settling disputes arising out of their contract, 12(b)(6) dismissal is a permissible means of enforcing that forum selection clause. *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir.2001) (affirming *Crescent Int'l v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir.1988)).

■ Similarly, in resolving a Rule 12(b)(1) motion, the Court may consider the pleadings as well as evidence outside the pleadings. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 910 F.Supp. 225, 227 (E.D.Pa.), aff'd, 96 F.3d 1434 (3d Cir.1996) (unpublished). On a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden to show jurisdiction. *Id.*

### Discussion

In this Motion to Dismiss, Defendants contend that this Court has no subject matter jurisdiction over Plaintiff's Title VII claim because during the relevant time periods Plaintiff was not hired as an "employee" but rather as an "independent contractor."

■ As repeatedly reaffirmed by this Court in numerous cases, Title VII protects workers who are "employees," but does not protect independent contractors. *Holtzman v. The World Book Company*, 174 F.Supp.2d 251, 253 (E.D.Pa.2001); *The Jean Anderson Hierarchy of Agents v. Allstate Life Insurance Company*, 2 F.Supp.2d 688, 692 (E.D.Pa.1998); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 910 F.Supp. 225, 227 (E.D.Pa.1996); *Lazarz v. Brush Wellman, Inc.*, 857 F.Supp. 417, 422 (E.D.Pa.1994). Under Title VII, this Court does not have jurisdiction unless the action involves an employer/employee relationship. *The Jean Anderson Hierarchy*, 2 F.Supp.2d at 692. In order to resolve defendants' motion for dismissal, we must first verify whether an employer/employee relationship existed between the parties. *Id.* As the statute does not provide a helpful definition of the term "employee", we will rely on a common-law agency test as various courts have done in the past. *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (citing Restatement (Second) of Agency § 220(2) (1958)). Under this common-law agency test, we determine a hired person's status by evaluating the hiring party's right to control the manner and means by which the product is accomplished. *Id.* at 323, 112 S.Ct. 1344. In so doing, we consider the following factors, none of which are in and of themselves dispositive:

(1) the skill required to perform the job,

(2) the source of the instrumentalities and tools necessary to perform the work required,

(3) the location of the work,

(4) the duration of the relationship between the parties,

(5) whether the hiring party has the right to assign additional projects to the hired party,

(6) the extent of the hired party's discretion over when and how long to work,

(7) the method of payment,

(8) the hired party's role in hiring and paying assistants,

(9) whether the work is part of the regular business of the hiring party,

(10) whether the hiring party is in business,

(11) the provision of employee benefits,

(12) and the tax treatment of the hired party.

*Darden,* 503 U.S. at 322–24, 112 S.Ct. 1344.

■ Here, the parties entered into an agent contract that specifically characterized the parties' relationship as an independent contractor relationship and not an employer/employee relationship. (Agent Contract, Ex. A, at ¶ 1). Indeed, the contract provides, in relevant part:

"1. Subject to the terms and conditions of this Contract, AHL hereby appoints Producer to solicit, procure and transmit to AHL applications for insurance and annuities issued by AHL, to pay over as directed by AHL all monies collected in connection with AHL's business and to perform such other functions as may reasonably be required by AHL. Nothing contained in this Contract shall be construed to create the relationship of employer and employee between AHL and Producer. Producer is acting as an independent contractor only. Producer may exercise his own judgment as to the time and manner of performance of his services, except that he shall conform with AHL's rules and regulations wherever applicable."

In response, the plaintiff raises the December 8th "Welcome Letter" signed by D'Epagnier which allegedly required the plaintiff to devote all of her time to AHL; assigned specific Allstate agents to plaintiff; required plaintiff to submit weekly activity reports; and set minimum performance goals for plaintiff. The plaintiff alleges that this "Welcome Letter" contradicted with the Agent Contract in a few aspects. First, it gave her a monthly advance instead of a salary on a commission basis as it was stated in the Agent Contract. Second, it required her to obtain a laptop computer and signature pad with specific requirements instead of giving her the freedom to choose her own equipment. The plaintiff further alleges that the fact that AHL reported the monthly compensation to plaintiff on a 1099 does not mean that the payments should not have been reported by AHL on W–2.

However, a close examination of submitted evidence clearly indicates that the only documents the parties both agreed to were the Agent Contract signed on November 27, 2000 and two of its supplemental agreements the "Producer Contract Addendum" both of which were signed on the same date. The December 8th "Welcome Letter" was only an informal business letter expressing the company's welcoming of a new producer and did not represent the parties' formal agreement.

As the defendant law firm in *Oshiver, supra,* defendant here did not have control over the manner and method by which Elise Kahn performed her services. Although close scrutiny of the Agent Contract reveals reservation of certain control by AHL such as (1) its power in appointing

new subordinate producers, (2) its power in prescribing the form, plan, rates, commissions, service fees, and character of policies, and (3) its power in requiring prior approval before producers publish or disseminate solicitations, forms, advertisements or material concerning AHL, we find these controls to be the minimum that a corporation has to retain to maintain its product quality and its consistent business practice. Furthermore, despite the contract's stipulation restricting plaintiff's power to appoint subordinate producers, nothing in the contract places any limitations on the plaintiff's discretion in hiring her own staff and employees. Indeed, like the plaintiff in *Oshiver* who worked in a law firm, Plaintiff here had a wide spectrum of freedom in choosing the means of conducting her business. In fact, like the defendant law firm in *Oshiver*, defendants here did not have any discretion over how, when and how long Elise Kahn worked in promoting sales of their products. Furthermore, although the parties' contract provided the plaintiff with rights to write new policies, it did not grant the defendants any right to assign additional work projects to her which were not in the original agreement.

■ Thus, upon consideration of the *Darden* factors as outlined above, we must conclude that the plaintiff, Elise Kahn, has not met her burden of establishing that she was an employee of the defendant companies instead of an independent contractor. Accordingly, we must conclude that Plaintiff here has no standing under Title VII of the Civil Rights Act, and this Court has no subject matter jurisdiction.[1] Thus we must dismiss the plaintiff's federal claim. Given that we further decline to exercise supplemental jurisdiction over plaintiff's state law claims, we need not address the defendants' remaining arguments in support of their motion for dismissal. *See*, 28 U.S.C. § 1367(c)(3). For the reasons set forth above, the plaintiff's Title VII claim is dismissed with prejudice. Her state law claims are dismissed without prejudice and with leave to replead them in the appropriate state court should she so choose.[2]

An order follows.

## *ORDER*

AND NOW, this 29th day of June, 2004, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's response thereto, it is hereby ORDERED that the Motion is GRANTED, Counts II through VI of Plaintiff's Complaint are DISMISSED without prejudice to Plaintiff's right to re-file them in the appropriate state court and Count I of the Complaint is DISMISSED with prejudice.

---

1. While it appears that the parties may be of diverse citizenship, the plaintiff has not invoked this Court's diversity jurisdiction under 28 U.S.C. § 1332 (See, e.g. Complaint ¶ 6).

2. We would note the existence of what appears to be a valid forum selection clause governing claims arising out of or related in any way to the solicitation, negotiation, inception or performance of this Contract. In the event that plaintiff should elect to refile her common law claims for breach of contract, unjust enrichment, tortious interference, in-

tentional infliction of emotional distress, she may wish to pursue them in a court of competent jurisdiction in Florida.

Although defendants also move to dismiss all six claims of plaintiff's complaint against the Allstate defendants based on the lack of "alter ego" liability, we would deny such motion for dismissal since there is not enough evidence at this juncture to determine the presence or absence of such "alter ego" liability or to ascertain the relationships if any, between the defendant companies.