**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-3332 & 13-3539
_____

HOWARD LEE WASHINGTON, ET AL,
INDIVIDUALLY AND AS CLASS REPRESENTATIVES,

Appellant

v.

CLIENT NETWORK SERVICES INC. (CNSI);
NATIONAL RAILROAD PASSENGER CORPORATION, (AMTRAK)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-01331)
District Judge:  Honorable Thomas N. O'Neill, Jr.
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 2, 2014

Before:  HARDIMAN, NYGAARD and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 4, 2014)
_____

OPINION
_____

PER CURIAM

        Howard Lee Washington appeals pro se from the District Court's orders that, inter

alia, dismissed his Second Amended Complaint.  We will affirm in part, vacate in part,

and remand for further proceedings.

I.

Washington is an African-American male over 50 years of age who alleges that he suffers from a mental disability. He was employed as a help desk data analyst by Computer Network Services, Inc. ("CNSI") to provide services for the National Railroad Passenger Corporation, popularly known as Amtrak, at 30th Street Station in Philadelphia. He claims that Amtrak was his employer as well. Washington resigned from his job on May 5, 2008, following an incident with a co-worker, and he characterizes his resignation as a constructive termination.

Washington filed suit pro se against CNSI alleging various forms of discrimination and later filed an amended complaint as of right naming both CNSI and Amtrak as defendants.[1] The District Court stayed the case pending Washington's attempts to obtain counsel and reopen matters allegedly pending before the Equal Employment Opportunity Commission ("EEOC"). When Washington failed to file a certain status report as directed, both CNSI and Amtrak filed motions to dismiss for failure to prosecute. Neither mentioned the merits of Washington's claims. The District Court, also without mentioning the merits of Washington's claims, granted him leave to file a Second Amended Complaint and denied defendants' motions as moot.

---

[1] Howard purported to file suit both individually and as "class representatives [sic]," but he has not requested class certification and pro se litigants generally are not adequate class representatives. See Hagan v. Rogers, 570 F.3d 146, 158-59 (3d Cir. 2009).

2

Washington later filed a Second Amended Complaint alleging that CNSI and Amtrak discriminated against him on the basis of his race, age, mental disability and his Christian religion, and he asserted claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Americans With Disabilities Act, the Rehabilitation Act, the Equal Pay Act, the Pennsylvania Human Relations Act, and 42 U.S.C. § 1981(a). Amtrak and CNSI filed motions to dismiss the complaint on the grounds, inter alia, that it fails to state a plausible claim for relief and that Washington failed to exhaust his administrative remedies. Washington responded by requesting leave to amend and then filing a brief, which also requested leave to amend and which (as far as the record shows) constituted his first opportunity to respond to any suggestion by defendants or the District Court that his claims might be legally insufficient.

By order entered June 27, 2013, the District Court dismissed Washington's claims against Amtrak on the sole ground that Amtrak was not his "employer" for purposes of these claims. Then, by order entered July 24, 2013, the District Court dismissed his claims against CNSI. With the exception of Washington's claim under the Equal Pay Act, which the District Court concluded was both untimely and failed to state a claim, the District Court dismissed Washington's claims against CNSI on the sole ground that he failed to file a timely charge with the EEOC. In both orders, the District Court denied

Washington leave to further amend.  Washington appeals.[2]

## II.

Washington's primary challenge on appeal is to the District Court's dismissal of his claims on the grounds just summarized.  We agree that these issues and the merits of Washington's claims warrant further consideration by the District Court.[3]

### A. Administrative Exhaustion

We begin with this threshold issue that potentially applies to both defendants. Before filing suit under many of the statutes on which Washington relies, a Pennsylvania resident like Washington generally must file a charge with the EEOC within 300 days of the discriminatory conduct alleged.  See, e.g., Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing Title VII, 42 U.S.C. § 2000e-5(e)(1)).  We recently held in the ADEA context that exhaustion of administrative remedies is a condition

---

[2] We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over the dismissal of a complaint under Rule 12(b)(6), see Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013), and we review dismissals without leave to amend for abuse of discretion, see id. at 217.

[3] Washington also challenges a number of the District Court's other rulings, but those challenges lack merit.  For example, Washington challenges the District Court's order denying him leave to file certain documents under seal, but it was not necessary for him to file evidentiary support for his claims because the District Court did not convert defendants' motions into ones for summary judgment.  We further reject Washington's arguments that the District Court should have entered a default judgment against the defendants, remanded this matter to the EEOC, and permitted him to file a claim under the Racketeer Influenced and Corrupt Organizations Act.

4

precedent to filing suit that may be alleged generally under Federal Rule of Civil Procedure 9(c) and that is not subject to the Rule 8 pleading standard set forth in, inter alia, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). See Hildebrand v. Allegheny Cnty., — F.3d. —, No. 13-1321, 2014 WL 2898527, at *11 (3d Cir. June 27, 2014). Washington alleges that he properly exhausted his claims by filing timely charges with the EEOC, and that allegation ordinarily would suffice. See id.

In this case, however, Washington attached to his First Amended Complaint an "affidavit" that he submitted to the EEOC on August 6, 2008 (ECF No. 6 at 5), and CNSI attached to its brief in support of its motion to dismiss an EEOC charge that Washington submitted on October 30, 2010 (ECF No. 41-10 at 3). The District Court dismissed the majority of Washington's claims against CNSI because it concluded that the 2008 affidavit is not a valid EEOC charge for Title VII purposes and that the 2010 EEOC charge was untimely. We will vacate that ruling for three reasons.

First, in assessing the validity of Washington's 2008 affidavit, the District Court relied—as CNSI asked it to do, and as it asks us to do on appeal—solely on the standard applicable to EEOC charges for purposes of Title VII. See 29 C.F.R. § 1601.12(b). That standard may apply to other anti-discrimination statutes as well, but neither the District Court nor CNSI addressed that issue and, at least in the ADEA context, the validity of EEOC charges is governed by a differently worded regulation. See Hildebrand, 2014 WL 2898527, at *12 (applying 29 C.F.R. § 1626.6). As the Supreme Court cautioned in

5

elucidating the standard in the ADEA context, "[w]hile there may be areas of common definition [among the anti-discrimination statutes]," litigants and their counsel "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 393 (2008). Neither the District Court nor CNSI have undertaken that examination, and we are not inclined to do so in the first instance sua sponte.

Second, and even if we were, the record is not sufficiently developed to resolve the validity of Washington's EEOC filings. Washington was not required to submit every document supporting his position at this stage, particularly because the District Court did not convert defendants' motions into ones for summary judgment. Washington's 2008 affidavit appears to incorporate "attachments" that he did not also attach to his complaint (ECF No. 6 at 5), and his First Amended Complaint refers to a 294-page document he claims to have submitted to the EEOC (ECF No. 6 at 2) that apparently is not of record in the District Court. Washington's Second Amended Complaint also appears to reproduce e-mail correspondence with the EEOC dating back to September of 2008. (ECF No. 37 at 20-21.) Given these submissions, it would be premature to resolve the timeliness and adequacy of Washington's submission to the EEOC at this stage.[4]

---

[4] One of the reasons the District Court gave for rejecting Washington's 2008 affidavit was that he did not allege that the EEOC received it. Washington's initial brief in opposition to defendants' motions to dismiss, however, attaches a letter from the EEOC

Finally, the requirement of timely exhaustion is not jurisdictional and thus is subject to equitable tolling. See, e.g., Ruehl v. Viacom, Inc., 500 F.3d 375, 384 (3d Cir. 2007) (ADEA); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (Title VII). In his complaints and other filings, Washington argued expressly and at length that he is entitled to equitable tolling because, inter alia, the EEOC mishandled certain of his alleged charges in various respects. Once again, neither the District Court nor CNSI addressed that issue. We leave it to the District Court to do so in the first instance if and when appropriate on remand.

B.     Whether Amtrak Was Washington's "Employer"

As the District Court explained, Washington must show that Amtrak was his "employer" in order to prevail on his claims against it under most of the statutes at issue. See, e.g., Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 119 (3d Cir. 2013) (Title VII). The District Court concluded that Washington did not allege that Amtrak was his employer and, in so doing, it noted several places in Washington's

_____

dated December 9, 2008, in which the EEOC acknowledged receiving correspondence from Washington regarding discrimination by both CNSI and Amtrak and in which the EEOC requested additional information. (ECF No. 58 at 10.) We further note that the validity of an initial charge, and whether the EEOC treats it as a charge, are not necessarily determinative. See Holender v. Mut. Indus. N. Inc., 527 F.3d 352, 357 (3d Cir. 2008); Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 2000).

various filings where he alleged that he was employed by CNSI. Washington argues, as he did before the District Court, that Amtrak should be deemed his employer for these purposes as well. This issue too warrants further consideration.

Neither the District Court nor Amtrak addressed the standard for determining whether a defendant is an employer for purposes of the anti-discrimination laws, and that standard embraces the concept of joint employment. See id. at 119-20; Graves v. Lowery, 117 F.3d 723, 727-29 (3d Cir. 1997) (citing NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1122-23 (3d Cir. 1982)). Whether Washington was employed by Amtrak as well as CNSI for these purposes turns on a number of factors, including Amtrak's level of control over Washington, which entity hired and paid him, and which entity generally controlled his day-to-day activities. See Covington, 710 F.3d at 119 (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992)). Under this standard, "the precise contours of an employment relationship can only be established by a careful factual inquiry," Graves, 117 F.3d at 729, and the issue thus "may generally require resolution at the summary judgment stage, rather than at the motion to dismiss stage," Mariotti v. Mariotti Bldg. Prods., Inc., 714 F.3d 761, 768 n.5 (3d Cir. 2013), cert. denied, 134 S. Ct. 437 (2013).

Washington has alleged facts arguably suggesting that Amtrak could be deemed his employer under this standard. For example, in his original complaint, he alleged that his claimed workplace mistreatment occurred at "Amtrak" and that "Amtrak managers"

8

were involved in it. (ECF No. 3 at 3.) In his First Amended Complaint, he alleged that he worked in "the Amtrak engineering department." (ECF No. 6 at 1.) In the resignation e-mail attached thereto, he states that he communicated with John Zachmann regarding when to return to work and other employment-related matters. (Id. at 6.) The e-mail reveals that, although Washington copied someone with an e-mail address "@cns-inc.com," both he and Zachmann used e-mail addresses "@amtrak.com." (Id.) The e-mail also refers to Washington having been issued "Amtrak equipment." (Id.) See Darden, 503 U.S. at 323 (identifying as a relevant factor "the source of the instrumentalities and tools") (quotation marks omitted). Washington's Second Amended Complaint too states that he was "employed by the defendant(s)" at "Amtrak's 30th Street facility" (ECF No. 37 at 12), refers to his "employment with CNSI and Amtrak" (id. at 15), and attaches an e-mail from Washington to the EEOC in which Washington states that "Amtrak Manager Michael Calderone, was my direct supervisor" (id. at 23).

Neither the District Court nor Amtrak acknowledged these allegations, let alone applied the applicable standard to them, and we once again decline to do so in the first instance sua sponte because further consideration is warranted in the District Court. Washington made certain assertions relevant to this issue in his brief in opposition to defendants' motions to dismiss,[5] but the District Court denied leave to amend on this

---

[5] For example, Washington referred to a conflict over who controlled his day-to-day activities, stated that his direct supervisor's "boss" was an "Amtrak Technologies Regional Manager—Systems Engineering," and asserted that he "expressed his concern

issue without explanation. Thus, we will vacate the District Court's ruling in this regard. If the District Court concludes on remand that Washington has not adequately alleged that Amtrak was an "employer," then it should exercise its discretion in the first instance in determining whether leave to further amend is appropriate.[6]

C.      Whether Washington Otherwise Stated a Claim for Relief

Both CNSI and Amtrak argued below that Washington's Second Amended Complaint otherwise fails to state a plausible claim for relief, but the District Court did not reach that issue. CNSI (though not Amtrak) repeats that alternative argument on appeal. We acknowledge that Washington's voluminous filings are not models of clarity and that his allegations of discrimination are largely conclusory. If we viewed his

---

about working in an environment where instructions were not clear." (ECF No. 58 at 2.)

[6] In the District Court, Amtrak submitted a copy of a contract between it and CNSI and argued that the contract shows that CNSI's employees are independent contractors and not employees of Amtrak. (ECF No. 45-2 at 2-21.) Amtrak also argued that the District Court should consider the contract under Rule 12(b)(1) because whether Amtrak was Washington's employer is not merely an element of Washington's claims but goes to the District Court's subject matter jurisdiction. The District Court did not rely on the contract but, citing Kahn v. American Heritage Life Insurance Co., 324 F. Supp. 2d 652, 657 (E.D. Pa. 2004), it agreed that Amtrak's status as an employer is a jurisdictional issue. We need not resolve whether that is so because the District Court did not rely on the contract, but we question that conclusion. Cf. Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue"); Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 83 (3d Cir. 2003) (same). We decline to rely on the contract at this stage as well, and we note that the existence of an independent contractor agreement may be "strong evidence" but is "not dispositive of the plaintiff's employment status[.]" Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009) (quotation marks omitted).

10

Second Amended Complaint in isolation, and if it represented an opportunity to remedy deficiencies previously raised by the defendants or the District Court, then we might agree that dismissal without leave to further amend was appropriate. After reviewing Washington's filings in context, however, we believe that this issue warrants consideration by the District Court.

Washington's First Amended Complaint alleges in conclusory fashion that "I may have been passed over for . . . positions, promotions, training, subject to discriminatory treatment and conditions and a hostile work environment, harassment, reprisal and/or retaliation including the threat of physical violence which led to my involuntary resignation." (ECF No. 6 at 1.) The First Amended Complaint also attached the above-referenced 2008 affidavit, in which Washington referred to his CNSI manager making comments about "Negros" and "casting me in the role of a coloured [sic] buffoon." (Id. at 5.) In addition, the First Amended Complaint appears to reproduce e-mails that Washington sent to the EEOC in which he claimed that an unspecified "mental handicap" made it difficult for him "to write a narrative document to show specific acts of discrimination" but in which he referred to pages in a 294-page document that he believes support his claims. (Id. at 2.)

Washington's Second Amended Complaint largely repeats the conclusory allegations from his First Amended Complaint (ECF No. 37 at 12-13), and again refers to his "mental handicap" and resultant difficulty in "writ[ing] a narrative document to show

specific acts of discrimination" (id. at 16). When Amtrak and CNSI moved to dismiss this complaint and argued for the first time that Washington failed to plead a plausible claim, however, he sought leave to amend and made several specific factual assertions in his supporting brief.

For example, Washington referred to specific conversations he had with specific individuals notifying them of his mental disability and requesting accommodations that he asserts they did not provide. (ECF No. 58 at 2-4.) He also refers to specific instances in which his supervisor expressed skepticism that "someone who looks like you went to Princeton" (id. at 2) and in which others called him "boy" (id. at 3-4), and he asserts that his supervisor "Stevenson and others repeatedly made negative comments about [my] age, religion, race, handicaps and nationality" (id. at 8). In addition, he asserts that he was not provided with various office equipment that other employees received, including a laptop computer that was necessary to complete tasks required for promotional opportunities. (Id. at 3-5.) Washington further asserts that, when he complained that he thought these and other actions were discriminatory, his supervisor told him to "stop complaining if he wanted to keep his job." (Id. at 3.)

The sole reason the District Court gave for dismissing Washington's claims against CNSI without leave to amend was that amendment would be futile in light of its ruling on exhaustion. The District Court did not reach the merits of Washington's claims, and thus did not consider whether they warranted leave to amend on the merits in light of

12

the assertions contained in his brief or otherwise. We believe it best for the District Court, which is more familiar with the parties and this litigation, to exercise its discretion in that regard in the first instance.

## III.

For the foregoing reasons, we will vacate the District Court's order entered June 27, 2013, vacate in part the District Court's order entered July 24, 2013, and remand for further proceedings consistent with this opinion. We express no opinion on the merits of Washington's claims and are remanding solely because they warrant further consideration in light of the issues discussed above. Washington's motions pending in this Court are denied.